UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONALD TACKMAN,

                                        Plaintiff,

                    v.

COMMISSIONER GOORD, WALTER KELLY,
Attica Superintendent, DONALD SELSKY,
Director of S.H.U., CAPT. JAMES A. CONWAY,
Deputy of Security of Attica, LT. COOK, Hearing
Officer, VICTOR HERBERT, Superintendent of
Attica Correctional Facility, JAMES CONWAY,
LT. GEORGE, LT. COOK, D.S.S. DONNELY,
GREGORY A. KIMMEL, SR., R. LT. PIKULA,
LEONARD BEK, LT. RANDY JAMES, LEE
GRANT, ROBERT J. SHAW, THOMAS MONIN,
PAULA KIRWIN, CAROL UNGER, BLAIR
EARSLEY, PAUL CHAPPIUS, ROBERT
CUNNINGHAM, RONALD PIKULA, S. ZIMMERMAN,
R.T. LOMANTO, JEFFREY SCHIFFER, DAVID
WIATER, JOHN SINSKI, GARY BARTZ, JEFFREY
E. BEA, ROBERT SKUBIS, DONALD MCKEON,
PETER CORCORAN, MARK BRADT, JAMES
STOVALL, JOHN H. BURNS, KATHLEEN
MacDONNELL, J. TIRONE, JEROME HENDEL,
EDWARD J. HAMILL, MICHAEL IRVIN, NEW YORK
STATE DIVISION OF PAROLE, MICHAEL URBAN,

                                        Defendants.
_____

**SUPPLEMENTAL
DECISION
and
ORDER
-------------------------------
REPORT
and
RECOMMENDATION**

**99-CV-0438A(F)**

APPEARANCES:        ANNA MARIE RICHMOND, ESQ.
                    Attorney for Plaintiff
                    Post Office Box 1215
                    Buffalo, New York 14213

                    ELIOT L. SPITZER
                    Attorney General, State of New York
                    Attorney for Defendants
                    MICHAEL A. SIRAGUSA
                    Assistant Attorney General, of Counsel
                    Statler Towers, 4th Floor
                    107 Delaware Avenue
                    Buffalo, New York 14202

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on September 7, 2004, for further proceedings and consideration in light of recent Second Circuit decisions relevant to the issues raised in summary judgment motions filed by Defendants on October 17, 2002 (Doc. No. 97) and by Plaintiff on November 25, 2002 (Doc. No. 103), as well as on Defendants' motion for discovery-related sanctions and to strike as untimely filed Plaintiff's cross-motion for summary judgment (Doc. No. 115),[1] filed February 10, 2003, and Plaintiff's motions to supplement the record, filed March 10, 2004 (Doc. No. 132), and March 23, 2004 (Doc. 133).[2]

## BACKGROUND

On June 25, 1999, Plaintiff, Ronald Tackman ("Tackman"), then incarcerated at Attica Correctional Facility ("Attica"), commenced this civil rights action *pro so*, pursuant to 42 U.S.C § 1983, alleging that his continuous confinement in the segregated housing unit ("SHU"), on administrative segregation status ("ad seg status"), violates his rights

---

[1] Defendants also moved for discovery-related sanctions, seeking to preclude from evidence documents Plaintiff submitted in opposition to Defendants' summary judgment motion, but which were not provided to Defendants in response to Defendants' discovery requests.  As the undersigned denied Defendants' request to preclude such documents from evidence, September 15, 2003 Decision and Order and Report and Recommendation at 15-16, however, and as Defendants have not challenged that decision the court will not re-address Defendants' motion (Doc. No. 115), insofar as Defendants sought discovery related sanctions.

[2] Although Plaintiff's motions to supplement the record are nondispositive, while Defendants' motions for summary judgment and to strike Plaintiff's cross-motion, as well as Plaintiff's cross-motion for partial summary judgment are dispositive, the issues in the dispositive and nondispositive motions pending before the court are intertwined and, as such, the court addresses all such motions together in the interests of clarity and judicial economy.

under both the Federal and New York Constitutitons and New York law.[3]  Defendants to

this action include Commissioner of New York's Department of Corrections ("DOCS")

Glen Goord ("Commissioner Goord"), Attica Superintendents Walter Kelly

("Superintendent Kelly") and Victor Herbert ("Superintendent Herbert"), Attica

Segregated Housing Unit Director Donald Selsky ("SHU Director Selsky"), and Michael

Irvin ("Irvin"), an employee of DOCS Inspector General's Office (collectively, "the

Supervisory Defendants").  The remaining Defendants, including Corrections Officers

Lt. George, D.S.S. Donnely, Gregory A. Kimmel, Sr., Lt. R. Pikula, Leonard Bek, Lt.

Randy James, Lee Grant, Robert J. Shaw, Thomas Monin, Paula Kirwin, Carol Unger,

Blair Earsley, Paul Chappius, Robert Cunningham, Ronald Pikula, S. Zimmerman, R.T.

Lomanto, Jeffrey Schiffer, David Wiater, John Sinski, Gary Bartz, Jeffrey E. Bea, Robert

Skubis, Donald McKeon, Peter Corcoran, Mark Bradt, James Stovall, John Burns,

Kathleen MacDonald, J. Tirone, Jerome Hendel and Edward J. Hamilton were, at all

time relevant to this action, members of Attica's Administrative Segregation Review

Committee ("ASCR") ("the ASCR Defendants").[4]

Plaintiff filed an Amended Complaint on February 9, 2001, and a Second

Amended Complaint (Doc. No. 31) ("the Second Amended Complaint"), on March 22,

2001.  Answers to the Second Amended Complaint were filed on March 27, 2001 by

---

[3] On June 25, 1999, Plaintiff moved for appointment of counsel (Doc. No. 3).  By order filed December 13, 1999 (Doc. No. 1999), the motion for appointment of counsel was granted and Jeffrey Abbate, Esq., and Anna Marie Richmond, Esq., were appointed as Plaintiff's counsel.  The record, however, does not indicate that Mr. Abbatte ever appeared in the action on Plaintiff's behalf.

[4] This action was discontinued as against Defendants Attica Deputy of Security Captain James A. Conway and Attica Hearing Officer Lt. Cook, by order filed February 9, 2001 (Doc. No. 27), Attica employee Michael Urban by order filed March 22, 2001 (Doc. No. 30), and New York State Division of Parole by order filed March 27, 2002 (Doc. No. 92).

each of the Supervisory Defendants, and on June 7 and 11, 2001 by the ASCR

Defendants.  A Scheduling Order filed on May 6, 2002 (Doc. No. 96), established

October 31, 2002 as the deadline for filing dispositive motions.

Defendants' motion for summary judgment, filed on October 17, 2002, was

accompanied by a Memorandum of Law in Support of Defendants' Motion for Summary

Judgment (Doc. No. 98) ("Defendants' Memorandum"), the Declaration of Director of

DOCS's Inmate Grievance Program ("IGP") Thomas Eagen (Doc. No. 99) ("Eagen

Declaration"), a Statement of Undisputed Facts (Doc. No. 100), and the Declaration of

Attica's IGP Supervisor George Struebel (Doc. No. 101) ("Struebel Declaration").  In

opposing Defendants' summary judgment motion, Plaintiff filed on November 25, 2002,

a cross-motion for summary judgment, supported by the attached Affidavits of Anna

Marie Richmond, Esq. ("Richmond Affidavit") and Plaintiff ("Plaintiff's Affidavit"), and

accompanied by Plaintiff's Memorandum of Law in Support of Cross-Motion for

Summary Judgment (Doc. No. 104) ("Plaintiff's Memorandum"), Plaintiff's Statement of

Facts (Doc. No. 105), Plaintiff's Memorandum of Law in Opposition to Defendants'

Motion for Summary Judgment (Doc. No. 106) ("Plaintiff's Response Memorandum"),

Plaintiff's Response to Defendants' Statement of Undisputed Facts (Doc. No. 107), and

three Affirmations by Anna Marie Richmond, Esq., with attached exhibits A through L

(Doc. No. 108), N through Y (Doc. No. 109), and M (Doc. No. 110) ("Plaintiff's Exh. __").

In further support of summary judgment and in response to Plaintiff's cross-

motion for summary judgment, Defendants filed on December 9, 2002, the Declaration

of Assistant Attorney General Michael A. Siragusa (Doc. No. 112) ("Siragusa Affidavit")

and Defendants' Memorandum of Law in Further Support of Their Motion for Summary

4

Judgment (Doc. No. 113) ("Defendants' Reply Memorandum").

On February 10, 2003, Defendants filed a motion seeking to preclude Plaintiff's submission of certain documents in opposition to summary judgment as a discovery-related sanction, and to strike Plaintiff's cross-motion for summary judgment as untimely.  The motion was supported by a Memorandum of Law in Support of Defendants' Motion for Discovery Related Sanctions and to Strike Plaintiff's Dispositive Motion (Doc. No. 116) ("Defendants' Memorandum in Support of Sanctions"), and the Declaration of Assistant Attorney General Michael A. Siragusa in Support of Defendants' Motion for Discovery Related Sanctions (Doc. No. 117) ("Siragusa Sanctions Declaration").  In opposition to Defendants' motion for discovery-related sanctions, Plaintiff filed on March 14, 2003, a Memorandum of Law Concerning § 1997e Exhaustion (Doc. No. 120) ("Plaintiff's Exhaustion Memorandum") and, on March 21, 2003, the Affirmation of Anna Marie Richmond, Esq., in Opposition to Defendants' Motion for Discovery-Related Sanctions (Doc. No. 121) ("Richmond Sanctions Affirmation").  On April 11, 2003, Defendants filed in further support of their motion for sanctions a Reply Memorandum of Law in Support of Defendants' Motion for Discovery Related Sanctions and to Strike Plaintiff's Dispositive Motion (Doc. No. 122) ("Defendants' Reply Memorandum in Support of Sanctions").  Oral argument on the motions was deemed unnecessary.

In a combined Decision and Order and Report and Recommendation filed on September 15, 2003 (Doc. No. 123) ("September 15, 2003 Decision and Order and Report and Recommendation"), the undersigned denied Defendants' motion for discovery related sanctions, and recommended granting Defendants' motion for

summary judgment, and dismissing Plaintiff's cross-motion for summary judgment as untimely.  September 15, 2003 Decision and Order and Report and Recommendation at 38.  It was alternatively recommended that if Defendants' motion for summary judgment was denied, and if Plaintiff's cross-motion for summary judgment was not dismissed as untimely filed, that Plaintiff's cross-motion for summary judgment be denied and the case be scheduled for trial on the merits.  *Id*.

On October 17, 2003, Plaintiff filed objections (Doc. No. 126) ("Plaintiff's Objections"), to the Report and Recommendation portion of the September 15, 2003 Decision and Order and Report and Recommendation.[5]  Defendants, on February 25, 2004, filed Defendants' Memorandum of Law in Response to Plaintiff's Objections to Magistrate Judge's Report and Recommendation (Doc. No. 130) ("Defendants' Memorandum Opposing Plaintiff's Objections").

On March 10, 2004, Plaintiff filed a motion to supplement the record (Doc. No. 132), supported by the attached Affirmation of Anna Marie Richmond, Esq. in Support of Motion to Supplement the Record ("Richmond Affirmation Supporting First Motion to Supplement the Record").  Also attached to the motion as Exhibit A is a copy of the document which Plaintiff seeks to submit as further evidence of his attempts to exhaust his administrative remedies of the claims on which the instant action is predicated, *i.e.*, Plaintiff's most recent Grievance No. 46545-04, submitted on February 27, 2004.  On March 23, 2004, Plaintiff filed a second motion to supplement the record (Doc. No. 133), supported by the attached affirmation of Anna Marie Richmond, Esq. in Support

---

[5] By Order filed September 30, 2003 (Doc. No. 125), Plaintiff's deadline for filing objections to the September 15, 2003 Decision and Order and Report and Recommendation was extended to October 17, 2003.

of Motion to Supplement the Record ("Richmond Affidavit Supporting Second Motion to

Supplement the Record").  Also attached to the motion as Exhibit A is a copy of the

Superintendent's March 10, 2004 response to Plaintiff's appeal of the Inmate Grievance

Resolution Committee ("IGRC") decision on Plaintiff's Grievance No. 46545-04.  On

May 6, 2004, Defendants filed in opposition to Plaintiff's motions to supplement the

record Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to

Supplement the Record and Plaintiff's Second Motion to Supplement the Record (Doc.

No. 136) ("Defendants' Memorandum Opposing Motions to Supplement the Record"),

with attached exhibits ("Defendants' Record Supplementation Opposition Exh. __"), and

the Declaration of DOCS IGP Director Thomas Eagen (Doc. No. 137) ("Second Eagen

Declaration"), with attached exhibits ("Second Eagan Declaration Exh. __").

On September 7, 2004, Chief District Judge Arcara remitted the matter to the

undersigned for further proceedings regarding the issue of Plaintiff's compliance with

the administrative exhaustion requirements of the Prisoner Litigation Reform Act of

1986 ("the PLRA"), 110 Stat. 1321 (1996), codified at 42 U.S.C. § 1997e, under recent

relevant decisions by the Second Circuit Court of Appeals.  Accordingly, by order filed

September 21, 2004 (Doc. No. 139), Plaintiffs were given until October 8, 2004 to

further respond to Defendants' motion to dismiss, and Plaintiff had until October 25,

2004 to file any further reply.  On October 8, 2004, Plaintiff filed Plaintiff's Memorandum

of Law Concerning Exhaustion of Administrative Remedies (Doc. No. 140) ("Plaintiff's

Exhaustion Requirements Memorandum"), with attached exhibits ("Plaintiff's Exhaustion

Requirements Exh. __").  By order filed October 19, 2004 (Doc. No. 41), Defendants'

time to respond in further support of summary judgment was extended to November 19,

2004.  On November 17, 2004, Defendants filed Defendants' Memorandum of Law

Concerning Exhaustion of Administrative Remedies Filed Pursuant to this Court's

September 7, 2004 Order (Doc. No. 142) ("Defendants' Exhaustion Requirements

Memorandum") with attached exhibits ("Defendants' Exhaustion Requirements Exh.

__").

By letter to the undersigned filed July 29, 2005, Plaintiff provided citations to

additional cases more recently decided by the Second Circuit Court of Appeals in

further support of Plaintiff's position that he exhausted administrative remedies as to his

instant claims (Doc. No. 143) ("July 29, 2005 Letter of Anna Marie Richmond, Esq.").

On August 11, 2005, Defendants filed Defendants' Responsive Memorandum of Law to

Plaintiff's July 28, 2005 Letter Brief (Doc. No. 145) ("Defendants' Exhaustion

Requirements Response Memorandum").  Oral argument was deemed unnecessary.

Based on the following, Defendants' motion for summary judgment (Doc. No. 97)

should be GRANTED; Plaintiff's cross-motion for summary judgment (Doc. No. 103),

should be DISMISSED as moot or, alternatively, should be DENIED; Defendants'

motion to dismiss Plaintiff's cross-motion for summary judgment (Doc. No. 115) as

untimely filed should be GRANTED and for discovery-related sanctions is DENIED;

Plaintiff's motion to supplement the record (Doc. No. 132) is GRANTED and Plaintiff's

second motion to supplement the record (Doc. No. 133) is GRANTED.[6]

---

[6] Plaintiff's first and second motions to supplement the record, as well as the portion of
Defendants' motion for discovery-related sanctions are nondispositive.

## FACTS[7]

The court assumes familiarity with the papers previously filed in connection with Defendants' motion for summary judgment, Plaintiff's cross-motion for summary judgment, and Defendants' motion for discovery related sanctions and to dismiss Plaintiff's cross-motion for summary judgment, as well as the facts as stated in the September 15, 2003 Decision and Order and Report and Recommendation. Accordingly, here, the undersigned provides only a summary of the salient facts previously stated, September 15, 2003 Decision and Order and Report and Recommendation at 6-11, but includes a more thorough statement of the facts presented for the first time in papers filed after September 15, 2003.

On September 21, 1989, Plaintiff Ronald Tackman ("Tackman"), incarcerated since 1985,[8] and then housed in Clinton Correctional Facility ("Clinton"), was served with an Administrative Segregation Recommendation ("ad seg recommendation"), signed by Defendant Lieutenant McCormick, recommending that Tackman be placed on ad seg status and housed in SHU, based on Tackman's history of using homemade guns in escape attempts, as well as on a confidential informant's statement that Tackman had fabricated a homemade gun.[9]  In particular, in 1985, Tackman, prior to

---

[7] Taken from the pleadings and motion papers filed in this action, unless indicated otherwise.

[8] The record does not indicate the basis for Tackman's convictions for which he was placed in DOCS's custody in 1985.  According to DOCS's internet web-site, however, Tackman is serving an indeterminate sentence of 14 years six months to 29 years based on convictions in New York for robbery in the first degree, robbery in the second degree, attempted robbery in the second degree, and escape in the first degree.  New York State Department of Correctional Services - Inmate Information, *available at* http://nysdocslookup.docs.state.ny.us.

[9] Although neither Tackman nor Defendants explain, for the purposes of this action, how Tackman came into possession of or fabricated the "homemade gun," according to a Report and Recommendation dated December 5, 1991 ("December 5, 1991 Report and Recommendation") (attached

being placed in DOCS custody, had used homemade guns in two previous prison

escape attempts, neither of which resulted in Tackman's confinement in SHU.  The ad

seg recommendation further charged Tackman with manufacturing and test-firing a gun

in his prison cell at Clinton.  A search of Tackman's cell revealed no weapon, but a

book with what appeared as a projectile hole through it was found.  When interviewed

on September 24, 1989, in connection with the ad seg recommendation, Tackman

denied having manufactured a gun in his cell, explaining that he had made false

statements to another inmate about possessing such a weapon to intimidate the other

inmate.

On September 30, 1989, Tackman was served with an Inmate Misbehavior

Report ("Misbehavior Report"), charging Tackman with manufacturing and test-firing a

homemade gun in his cell.  In connection with the charges, Tackman was confined to

Clinton's SHU on October 1, 1989.  At an October 2, 1989 hearing held regarding the

Misbehavior Report, Tackman repeated his assertion that he falsified statements about

manufacturing a firearm in his cell to intimidate another inmate, and further testified that

he had used a ball point pen to drill a hole through a book to support his fabricated

story that Tackman possessed a homemade gun.  Tackman maintains that at the

---

as Exh. B to Defendants' Exhaustion Requirements Memorandum), and prepared by United States
Magistrate Judge Ralph W. Smith for the Northern District of New York, in connection with another action
commenced by Tackman challenging his initial placement in SHU on ad seg status while confined in
Clinton Correctional Facility, *Tackman v. Coughlin*, No. 90-CV-1079 (N.D.N.Y.), the "homemade" gun
Tackman allegedly fabricated in his cell "was an inoperable homemade gun made from a bar of soap."
December 5, 1991 Report and Recommendation at 6.  Judge Smith further reported, based on
information received from the confidential informant, that the inmate occupying the cell next to Tackman's
cell was holding parts of the gun because Tackman was anticipating a search of his cell, the facility
authorities also search such inmate's cell and found "a metal rod that was 2.5 inches long and had a
charred substance inside, and they also confiscated a round metal ball that appeared to be mushroomed
on one side.  The officers believed that these items may have formed a gun which could have been test
fired."  December 5, 1991 Report and Recommendation at 6-7.

October 2, 1989 hearing he was denied the opportunity to present exculpatory evidence and was never shown any evidence supporting the assertion that his presence in the prison's general population posed a threat to the prison facility's safety and security. Following the hearing, Defendant Hearing Officer Howard accepted Lt. McCormick's recommendation and Tackman was placed on ad seg status and his confinement in Clinton's SHU was continued.  Tackman appealed the decision placing him on ad seg status and confining him to SHU to Defendant Director of SHU Donald Selsky, who affirmed the decision.[10]  Tackman remained confined in Clinton's SHU until August 27, 1993 when Tackman was transferred to DOCS's Attica Correctional Facility ("Attica"), where he was immediately placed in Attica's SHU, and remains to date.  It is undisputed that while housed in SHU, an inmate's privileges and opportunities to participate in various facility programs are greatly curtailed as compared to the general prison population.

Attica's ASRC is charged with periodically reviewing the ad seg status of each inmate housed in SHU to determine whether an ad seg inmate's status should be continued, or whether such inmate should be returned to the general prison population. Attica's ASRC is comprised of the Deputy Superintendent of Security, an Administration Lieutenant, and a Corrections Counselor.  Following each ad seg status inmate's review, the ASRC submits to Superintendent Kelly a recommendation as to each inmate ("the ad seg status report").

Specifically, the ASRC's recommendation as to whether an ad seg inmate is to

---

[10] The date of Selsky's decision affirming Tackman's placement in SHU on ad seg status is not in the record.  *See* Second Amended Complaint ¶ 31 ("Plaintiff appealed his placement in ad seg to Defendant DONALD SELSKY, who affirmed Hearing Officer Howard's determination.").

be retained in or released from SHU on ad seg status is recorded on an ad seg status report form by placing a checkmark in the appropriate blank.  The report is then sent to Superintendent Kelly for his signature, thereby indicating Kelly's concurrence in the recommendation.  Between September 1, 1993 and December 2, 1998, Attica's ASRC submitted weekly ad seg status reports[11] recommending continuation of Tackman's ad seg status with Tackman confined in SHU, based on concerns for the prison facility's safety and security given that Tackman was in possession of a weapon while housed in the general prison population at Clinton.  Beginning on December 2, 1998 and continuing through May 3, 2000, the ad seg status reports were submitted on a monthly, rather than weekly, basis and contain essentially the same information as the weekly ad seg status reports, with the additional notation that "no new information has surfaced to change the status of the above named inmate."  Plaintiff's Exh. M. Tackman maintains that the ASRC's review of his ad seg status has been performed in a cursory, perfunctory manner without consideration of Tackman's recent behavior or ability to live in the general prison population while confined at Attica, because Tackman had never been notified of the ASRC's meetings, provided with copies of the ad seg status reports recommending continuation of Tackman's ad seg status and confinement in SHU, asked to present any evidence in support of changing Tackman's ad seg status, had never been personally interviewed by the ASRC regarding his ad seg status, and was never advised as to any remedial measures that could improve Tackman's chances of returning to the general prison population.

---

[11] Copies of the ad seg status reports Attica's ASRC submitted to Superintendent Kelly relative to Tackman's claims are attached as Plaintiff's Exh. M.

Based on these deficiencies, Tackman filed several inmate grievances and has written several letters to various DOCS and Attica officials regarding his ad seg status, including Grievance No. A 32082-95 ("Grievance No. A 32082-95"), filed on July 31, 1995, complaining about his placement in SHU, and Grievance No. A 38414-99 ("Grievance No. 38414-99"), filed March 2, 1999 complaining, in particular, that Defendants had failed to provide Tackman with copies of the ASRC's ad seg status review reports in violation of N.Y. COMP. CODES R. & REGS. tit. 7, § 301.4(d) (1990) ("7 N.Y.C.R.R. § 301.4(d)").[12]  On March 10, 1999, the IRGC responded to Grievance No. 38414-99, advising Tackman that the "[g]rievance is dismissed per Directive 4040 V-A-5a-1.  Grievant needs to address this issue to Sgt. Buehler, Lt. J. Bea, Capt. R.K. James, and Dept. Supt. of Security, J. Conway, in that order."  Struebel Declaration Exh. F.  In a memorandum dated March 12, 1999 ("March 12, 1999 Memorandum"), Captain R. James further informed Tackman that "[y]our Adminsitration Segregation reviews are conducted as appropriate and you are not a required recipient.  If you would like a copy, you must contact our F.O.I.L.[13] Officer, the Inmate Record Coordinator."  Plaintiff's Exh. D.

Tackman maintains nevertheless that he was denied the opportunity to file further formal grievances concerning his ad seg status as Defendants to whom Tackman purportedly handed grievances for filing have destroyed them and, as such,

---

[12] A copy of the Superintendent's Decision denying Grievance No. A 32082-95 is submitted as Plaintiff's Exh. A, although no copy of Grievance No. A 32082-95 is in the record.  A copy of Grievance No. 38414-99 is attached as Exh. F to the Struebel Declaration.

[13] References to "foil" or "F.O.I.L." presumably are to New York's Freedom of Information Law, New York Public Officers Law § 85 et seq., vol. 46 Consolidated Laws of New York, McKinney's 2001.

Tackman resorted to submitting letters in an attempt to informally exhaust administrative remedies as to such complaints.  In particular, on March 14, 1999 ("March 14, 1999 Letter"), Tackman wrote Defendant Lieutenant Bea, inquiring as to why Tackman had not been provided with copies of the 30-day ad seg status review reports prepared by the ASRC following each periodic review.  Plaintiff's Exh. B.  In a letter to Defendants Sergeant Buehler, Lieutenant Bea, Captain James and Superintendent Conway dated March 15, 1999 ("March 15, 1999 Letter"), Tackman complained that although the relevant DOCS's regulation, 7 N.Y.C.R.R. § 301.4(d), provided for review of Tackman's ad seg status every 30 days, Tackman, in the five years since he was initially confined in SHU on ad seg status, commencing while confined at Clinton, had never received any notices "in writing" that such reviews had been conducted as required under the regulation.  Plaintiff's Exh. C.  A handwritten notation by an unidentified author at the bottom of the letter states "[y]our Admin Seg reviews are conducted as appropriate & you are not a required recipient.  If you would like a copy, you must contact our foil officer, the IRC."  *Id*.

In a letter to Deputy Superintendent Conway dated March 26, 1999 ("March 26, 1999 Letter"), Tackman explained that he was writing in accordance with Lt. Bea's instructions to request an explanation as to why Tackman had not been provided with any papers regarding his periodic ad seg status review.  Plaintiff's Exh. E.  By letter to Attica's Superintendent dated April 18, 1999 ("April 18, 1999 Letter"), Tackman advised that he had filed several grievances pertaining to the conditions to which he was subjected while confined in SHU, but that such grievances had not been answered.  Plaintiff's Exh. F.  Tackman further stated "[p]lease accept this as a [*sic*] appeal."

Plaintiff's Exh. F.

In a letter to "IGRC Supervisor" dated May 10, 1999 ("May 10, 1999 Letter"),

Tackman stated that he had been unlawfully confined in administrative segregation

since 1989 and, as such, had been separated from the general prison population since

arriving at Attica in 1993, that he has not received copies of any of the ASRC's ad seg

status reports and that, after serving some time in SHU on disciplinary status, he was

returned to ad seg status and remained in SHU without receiving a new hearing.

Plaintiff's Exh. G.  Tackman also complained that he was denied medical and dental

care, art supplies and other prison privileges.  *Id*.  According to Tackman, because

some Defendants would only answer Tackman's letters by talking to him, Tackman

made verbal complaints to those Defendants while they conducted rounds of the SHU

gallery.  *Id*.  Tackman requested to be released from SHU to the general prison

population and his confinement in SHU be declared illegal, that future reviews of his ad

seg status be "meaningful and clearly state the reason" for his continued SHU

confinement, and that he receive dental and medical care and be permitted to

participate in prison programs.  Plaintiff's Exh. G.

In a letter to the Central Office Review Committee ("CORC"), dated June 8, 1999

("June 8, 1999 Letter"), Tackman advised that he had written several grievances about

his "illegal placement" in SHU, and that all his complaints had been dismissed or

ignored.  Plaintiff's Exh. H.  Tackman requested assistance "on this mather [*sic*], or in

the alternative accept this as a [*sic*] appeal."  *Id*.

On December 6, 1999, Tackman wrote then Attica Superintendent Herbert

("December 6, 1999 Letter") requesting Herbert's assistance in investigating the reason

for Tackman's continued confinement in SHU for more than 10 years, requested a written response, and also complained of being denied receipt of a package of art supplies, specifically, drawing paper.  Plaintiff's Exh. I.  A handwritten notation at the bottom of the letter directed Attica Deputy Superintendent Conway to reply on Superintendent Herbert's behalf.  *Id*.  Accordingly, Deputy Superintendent Conway, in a memorandum dated December 10, 1999 ("December 10, 1999 Memorandum"), advised Tackman that Superintendent Herbert was reviewing Tackman's file and that Conway had approved Tackman's receipt of his package of drawing paper that was being held in Attica's mailroom.  Plaintiff's Exh. J.  Superintendent Herbert was copied on the December 10, 1999 Memorandum.  *Id*.  A handwritten notation appearing near the bottom of the December 10, 1999 Memorandum states that "upon review, I cannot concur w/ releasing him from Admin Seg - he remains," followed by the note's author's initials which are illegible.  *Id*.

Tackman, who claims that he has been denied proper dental care since his confinement in SHU on ad seg status, Second Amended Complaint ¶ 20.j, also submitted three requests in writing, dated July 10, 1994, June 15, 1995, and September 22, 1997, to have his teeth cleaned by Attica's dentist.  Plaintiff's Exh. K.  The record does not indicate whether Tackman ever received any response to the requests for dental care, or whether Tackman further pursued the matter.

Defendants seek to strike from Plaintiff's evidence in opposition to summary judgment several recently submitted letters, arguing that Tackman did not provide such letters in response to Defendants' First Set of Interrogatories and Documents Demand. Defendants also dispute whether, even if considered, such letters were sufficient to

exhaust Tackman's administrative remedies as to such grievances.  The letters at issue

include the March 14, 1999 Letter to Lt. Bea, Plaintiff's Exh. B, the April 18, 1999 Letter

to Superintendent Herbert, Plaintiff's Exh. F, the May 10, 1999 Letter to the IGRC

Supervisor, Plaintiff's Exh. G, and the June 8, 1999 Letter to CORC, Plaintiff's Exh. H.

At all times pertinent to this action, the relevant DOCS regulation, 7 N.Y.C.R.R. §

301.4, required that upon being involuntarily placed in SHU on ad seg status based on

a determination that the inmate's presence in the general prison population posed a

threat to the safety and security of the facility, the inmate's ad seg status was subject to

periodic review every 30 days by a committee consisting of three correctional facility

employees with the results of each periodic review forwarded in writing to the prison

facility's superintendent.  Effective January 1, 2003, 7 N.Y.C.R.R. § 301.4 was

amended to provide for regular review of an inmate's ad seg status every 60 days and a

newly added provision permits the correctional facility's deputy superintendent to

designate some inmates on ad seg status to receive central office review by the CORC,

rather than ASRC review at the facility level, that such review would include a statement

from the inmate and that such inmates were required recipients of copies of the

determinations following central office review.  7 N.Y.C.R.R. § 301.4(d)(4).

Tackman's ad seg status was last reviewed by the ASRC at the facility level, *i.e.*,

pursuant to 7 N.Y.C.R.R. § 301.4(d)(1), on January 3, 2003.  On January 7, 2003,

DOCS Deputy Commissioner Lucian J. LeClaire, Jr., designated Tackman as a "Central

Office Administrative Segregation Review inmate," thereby entitling Tackman's ad seg

status to "Central Office review," *i.e.*, review by the CORC according to the then newly

enacted provisions of 7 N.Y.C.R.R. § 301.4(d).  Second Eagen Declaration ¶ 11 and

Exh. A.  After being designated for central office review, Tackman first received central office review of his ad seg status by the CORC on March 6, 2003.  Since then, Tackman's ad seg status has been subjected to central office review resulting in the recommendation that Tackman's ad seg status be continued because Tackman's history of escape attempts at Clinton established Tackman's placement in the general prison population would pose a continued risk to prison safety and security.

Reviews of an inmate's ad seg status by the ASRC at the facility level are grievable through the IGP, although central office review of an inmate's ad seg status by the CORC, which is conducted outside the prison facility at DOCS's central office in Albany, New York, is not grievable through the IGP.  Tackman seeks to supplement the record with additional evidence he maintains establishes that his claims in the instant action were not grievable pursuant to the IGP.

Specifically, on March 1, 2004, Tackman filed a new complaint, dated February 25, 2004, with the IGRC, ("Grievance No. 46545-04"), complaining that he has been confined in SHU on ad seg status since 1989.  Following a Tier III disciplinary hearing in 1993, Tackman's status was changed to disciplinary segregation and he was placed in disciplinary SHU.  However, upon serving his disciplinary sentence in SHU, Tackman was returned to SHU on ad seg status, without a new hearing, which Tackman maintains was a due process violation.  Second Amended Complaint ¶ 45.  As noted, Tackman also claimed he was denied due process at his initial ad seg hearing in 1989, as well as in subsequent ad seg status review hearings.  Tackman newly asserted in Grievance No. 46545-04 that the recent changes in the relevant regulations requiring review of his ad seg status every 60 days, rather than every 30 days, has caused him

18

more pain and suffering and further due process violations, and also demonstrates that

the reviews of his ad seg status conducted over the last 14 years have not been

meaningful.  Further, Tackman complained that since being housed in SHU since 1989,

whether on ad seg status or disciplinary segregation status, he had been denied proper

dental care, prohibited from participating in prison programs available to inmates within

the general prison population, and was confined to his SHU cell without proper exercise

or human contact and placed on a restricted diet.  Tackman also complained that he

lost two years and eight months of "good time" credit because of his ad seg status

designation.

The IGRC denied Grievance No. 46545-04 on March 3, 2004, stating that

"Grievant is advised that Admin. Seg. Hearings have their own appeal and review

mechanism and cannot be changed through the Grievance Office." Richmond

Affirmation Supporting First Motion to Supplement the Record, Exh. A.  Tackman

appealed the IGRC decision denying Grievance No. 46545-04 to Attica's

Superintendent and, on March 13, 2004, received the Superintendent's response,

dated March 10, 2004, denying the grievance and advising that "[y]our [Tackman's]

administrative segregation hearings are appropriately held and decisions made based

on all presented evidence.  Your case and continued Ad Seg status is subject to review

by Central Office.  This facility and the grievance program cannot supersede Central

Office Review."  Richmond Affirmation Supporting Second Motion to Supplement the

Record, Exh. A.  Tackman maintains that the IGRC notice and the Superintendent's

notice denying Grievance No. 46545-04 establish that his ad seg status and

confinement in SHU is not grievable and, thus, Defendants' contention that Tackman

has failed to exhaust administrative remedies regarding his claims is irrelevant. Plaintiff's Exhaustion Requirements Memorandum at 9-11.  Defendants oppose supplementing the record.

## DISCUSSION

### 1.    Motion for Discovery Related Sanctions

Tackman, in opposition to Defendants' motion for summary judgment, submitted several documents which Defendants, pursuant to Fed. R. Civ. P. 26(e) ("Rule 26(e)"), seek to preclude from evidence to sanction Plaintiff for failing to previously disclose the documents in response to Defendants' First Request for Production of Documents served on Tackman on July 3, 2001, or for failing to supplement his initial responses. Defendants' Memorandum in Support of Sanctions at 1-3.  The documents Tackman produced for the first time in response to Defendants' summary judgment motion include several letters relied upon by Tackman to support his assertion that he exhausted his administrative remedies as to his grievances filed objecting to his ad seg status reviews and placement in SHU.  Plaintiff's Exhs. B, F, G and H.  *Id.*  Tackman argues in opposition to Defendants' motion for sanctions that preclusion of the letters as evidence on the instant motions is not warranted because (1) it was not clear, based on applicable caselaw when Tackman's responses to Defendants' discovery demands were prepared, that exhaustion of Tackman's administrative remedies as to claims challenging prison conditions, as relevant to Tackman, was required, Richmond Sanctions Affirmation ¶¶ 10-17; (2) Tackman was unaware that the disputed letters were not included in the responses Ms. Richmond prepared to Defendants' discovery

requests, Richmond Affirmation ¶¶ 23-25; Defendants should have been in possession

of the disputed letters, thereby negating Tackman's need to provide copies and,

instead, focus on other documents responsive to the Defendants' discovery requests

not likely to be in Defendants' possession, *id.* ¶¶ 28-40; and Defendants never advised

they intended to raise failure to exhaust as an issue in this action, *id.* ¶¶ 44-52.

In the September 15, 2003 Decision and Order and Report and

Recommendation, the undersigned found that Tackman's failure to produce the

disputed letters either in response to Defendants' discovery requests or as a

supplemental response violates Fed. R. Civ. P. 26(e) ("Rule 26(e)"), but that despite

such violation, the requested sanction was not warranted.  September 15, 2003

Decision and Order and Report and Recommendation at 15-16.  In particular, the court

observed that Rule 26 does not specifically provide for sanctions for failure to comply,

nor does Fed.R.Civ.P. 37, authorizing sanctions based upon a party's unjustified failure

to comply with discovery requests, specifically address the failure to supplement in

accordance with Rule 26(e), although "it is within the inherent power of the district court

to impose sanctions for a violation of Rule 26(e)."  *Id*. at 13 (citing *Outley v. City of New

York*, 837 F.2d 587, 589 (2d Cir. 1988)).  Nevertheless, generally only a showing of

wilfulness or bad faith on the part of the party refusing discovery warrants imposition of

severe sanctions, such as preclusion of evidence.  *Id*. at 13-14 (citing *Cine Forty-

Second Street v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066-67 (2d Cir. 1979)).

Further, four factors should be considered in deciding what sanctions are appropriate,

including (1) the proponent's explanation for failing to provide the subject evidence; (2)

the importance of such evidence to the proponent's case; (3) the opponent's time

needed to prepare to meet the evidence; and (4) the possibility of obtaining a

continuance to permit the opponent to meet the evidence.  *Id*. at 14 (citing *Outley,*

*supra*, at 590).

The record before the court included the lack of any evidence establishing that

Tackman's failure to supplement his initial responses to Defendants' discovery requests

was anything other than the good faith oversight of Tackman's counsel, that the letters

could be critical to the issue of whether Tackman exhausted his administrative

remedies, that any resulting prejudice to Defendants could be overcome by permitting

Defendants an opportunity to interview or depose relevant persons regarding the

disputed letters, including their authenticity which Defendants challenge, and that

Defendants sought the most drastic remedy as a sanction when lesser remedies would

have sufficed, including extending discovery deadline to permit Defendants to meet the

evidence.  September 15, 2003 Decision and Order and Report and Recommendation

at 14-15.  As such, the undersigned concluded that Tackman's failure to supplement his

responses to Defendants' discovery requests with the disputed letters did not warrant

their preclusion from evidence in opposition to summary judgment; rather, the proper

sanction would be to extend the discovery deadline to permit Defendants to meet the

evidence.  *Id*. 15-16.  Nevertheless, because the court found that the disputed letters

failed to establish that Plaintiff exhausted his administrative remedies and

recommended granting summary judgment in Defendants' favor on that basis, the

discovery deadline was not extended. *Id*. at 16.

Defendants' motion to preclude the letters from evidence was nondispositive of

any issue in the case and, as such, the undersigned's findings regarding the motion

was an order rather than a recommendation, and any objection to the order was required to be made "[w]ithin 10 days after being served with a copy of the . . . order." Fed. R. Civ. P. 72(a).  If such objections are filed, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."  *Id*.; *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the [district] court may reconsider any [nondispositive] pretrial matter where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").  Defendants never filed any objections to the September 15, 2003 Decision and Order and Report and Recommendation and are now well beyond the 10-day period in which to file objections.  Nevertheless, Defendants, in connection with Chief Judge Arcara's remittance, again assert that Tackman should be precluded from introducing the letters in opposition to summary judgment, as well as at any trial on this matter.  Defendants' Exhaustion Requirements Memorandum at 9.  Alternatively, Defendants renew their request for an extension of discovery to meet the evidence.  *Id*.

Because Defendants failed to either timely object to the undersigned's order denying the request for discovery related sanctions, and have also failed to move for reconsideration of such order, the matter is not subject to further review in this court but, rather, is the law of the case in this court.  *See Marcella v. Capital District Physician's Health Plan, Inc.*, 293 F.3d 42, 46-47 (2d Cir. 2002) (observing that failure to timely object to magistrate judge's order forfeits further review by the district court, as well as appellate review, and the magistrate judge's finding becomes the law of the case, except for challenges to subject matter jurisdiction, which cannot be waived).  As

the court, however, continues to recommend granting summary judgment in favor of

Defendants on the merits, based on Tackman's failure to exhaust administrative

remedies regarding his claims, Discussion, *infra*, at 32-65, the court will not extend the

discovery deadline.  Accordingly, Defendants' motion for sanctions or, alternatively, to

extend the discovery deadline (Doc. No. 115) is DENIED.


2.      **Motions to Supplement the Record**

        Tackman moves to supplement the record by filing as evidence in opposition to

Defendants' summary judgment motion and in support of Tackman's cross-motion for

summary judgment copies of Grievance No. 46545-04 and the responses of the IGRC

and Attica's Superintendent to the grievance.  According to Tackman, the IGRC notice

and the Superintendent's notice denying Grievance No. 46545-04 establish that

Defendants have thwarted Tackman's efforts to grieve his complaints relating to his

continued ad seg status or, alternatively, Tackman's ad seg status and continued

confinement in SHU is not grievable and, thus, Defendants' argument in support of

summary judgment that Tackman has failed to exhaust administrative remedies

regarding his claims is a "red herring."  Richmond Affirmation Supporting First Motion to

Supplement the Record ¶ 10.a and b; Richmond Affirmation Supporting Second Motion

to Supplement the Record ¶ 5.  Defendants oppose the motion arguing Tackman has

misinterpreted the relevant regulations which provide that ad seg status review by the

ASRC at the facility level is grievable pursuant to the IGP, although central office review

of ad seg status is not similarly grievable.  Defendants' Memorandum Opposing

Motions to Supplement the Record at 2.  Thus, as Tackman's ad seg status was

reviewed by the ASRC at the facility level prior to January 7, 2003, when Tackman was selected to have his ad seg status subjected to central office review by the CORC, all of Tackman's ad seg status reviews conducted prior to March 6, 2003, when central office review commenced, were grievable, and Tackman's failure to exhaust his administrative grievance remedies is fatal to his claims as they all relate to that time period.  Defendants' Memorandum Opposing Motions to Supplement the Record at 4-5.

Upon reviewing Tackman's newly proffered evidence the court, the court finds that while such evidence does not support Tackman's contention that, to comply with the PLRA's exhaustion requirement, he sufficiently grieved his continued ad seg status determinations challenged by the Second Amended Complaint, the evidence is probative of the change in Tackman's ad seg status review subsequent to the amendment of 7 N.Y.C.R.R. § 301.4(d), effective January 1, 2003.[14]  *See* Discussion, *infra*, at 37-39.  As such, Plaintiff's first and second motions to supplement the record are GRANTED.

### 3.   Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The

---

[14] The Second Amended Complaint does not challenge Tackman's continued confinement after the 2003 amendment to 7 N.Y.C.R.R. § 301.4(d).

court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 58, 593 (2d Cir. 1999) (citing *Anderson, supra*, at 255).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex, supra*, at 322; *see Anderson, supra*, at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  In assessing a record to determine whether there is genuine issue of material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.  *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, supra*, at 323-24 (1986) (quoting Fed.R.Civ.P. 56).  Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the

non-moving party's case." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164

F.3d 736, 742 (2d Cir. 1998).  Once a party moving for summary judgment has made a

properly supported showing as to the absence of any genuine issue as to all material

facts, the nonmoving party must, to defeat summary judgment, come forward with

evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v.*

*March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Although a summary judgment motion may be made with or without supporting

affidavits, if affidavits are submitted, they "shall be made on personal knowledge, shall

set forth such facts as would be admissible in evidence, and shall show affirmatively

that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P.

56(a).  Rule 56 further provides that

> [w]hen a motion for summary judgment is made and supported as provided in
> this rule, an adverse party may not rest upon the mere allegations or denials of
> the adverse party's pleading, but the adverse party's response, by affidavits or
> as otherwise provided in this rule, must set forth specific facts showing that there
> is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

"However, if the motion for summary judgment is not made and supported as provided

in Rule 56, the Rule does not impose on the party opposing summary judgment an

obligation to come forward with affidavits or other admissible evidence of his own."  *St.*

*Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (reversing granting of summary

judgment in favor of defendant because defendant failed to allege factual basis for

assertions contained in defendant's affidavit such that plaintiff, as the party opposing

summary judgment, was not required to adduce evidence to defeat summary judgment

and the "self-serving" nature of plaintiff's affidavit statements went to the weight of the

statements, rather than to their admissibility).

## A.    Defendants' Motion for Summary Judgment

Defendants seeks summary judgment on Tackman's claims asserting violations of his constitutional rights, specifically for due process violations, on the basis that Tackman failed to exhaust administrative remedies relative to such claims.  Defendants' Memorandum at 5-7; Defendants' Reply Memorandum at 3-10.  Defendants further argue that this court is without supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims, asserting similar due process violations under parallel state laws, as the Eleventh Amendment's doctrine of sovereign immunity prohibits such claims from being maintained against state employees in their official capacity, Defendants' Memorandum at 10-11.[15]  Tackman maintains that genuine issues of material fact exist as to whether he has sufficiently exhausted his administrative remedies as to his federal claims and, as such, Defendants' motion for summary judgment on the federal claims should be denied, and there is no basis for declining to exercise supplemental jurisdiction over Tackman's pendent state claims. Plaintiff's Response Memorandum at 6-10.

As discussed below, the record before the court establishes that Tackman failed to exhaust the available administrative remedies as to his § 1983 claims asserted in the Second Amended Complaint.  Alternatively, the record fails to establish any material

---

[15] Defendants' proceed as though they are sued only in their official capacities, although it is not clear from the Complaint, the Amended Complaint, the Second Amended Complaint, or the motion papers filed in this action that Defendants are not also sued in their individual capacities.  Based on this court's finding that Tackman's failure to exhaust, through available grievance procedures, his claims requires the Second Amended Complaint be dismissed, such ambiguity is irrelevant.

issue of fact (1) that the Inmate Grievance Procedure was unavailable for Tackman to exhaust his claims, (2) that Defendants interfered with and impeded Tackman's attempts to administratively grieve his complaints, or (3) the existence of any special circumstances negating Tackman's obligation to exhaust administrative remedies.

### 1.     Exhaustion of Remedies - Civil Rights Claims

As stated, Defendants seek summary judgment on Tackman's claims alleging violations of his federal civil rights on the basis that Tackman has failed to exhaust his administrative remedies regarding such claims as required under the PLRA. Defendants' Memorandum at 5-7; Defendants' Reply Memorandum at 3-10.  Tackman initially argued in opposition to summary judgment that genuine issues exist as to whether he exhausted such claims, that it was not clear when the instant action was commenced that Tackman's claims challenging the conditions of his confinement were subject to the PLRA's exhaustion requirements, and, further, in any event, letters Tackman wrote to various prison officials were sufficient to informally exhaust administrative remedies.  Plaintiff's Response Memorandum at 6-10; Plaintiff's Exhaustion Memorandum at 4-8.

In accordance with Judge Arcara's order remitting the matter for further proceedings before the undersigned in consideration of recent Second Circuit decisions regarding the exhaustion of administrative remedies, Tackman now argues that he informally exhausted his administrative remedies.  Plaintiff's Exhaustion Requirements Memorandum at 6-8.  Tackman contends that assuming, *arguendo*, the court determines Tackman did fail to exhaust administrative remedies, Tackman also sets

forth three alternative arguments as to why such failure does not bar his claims, including that (1) no formal grievance procedure for administratively exhausting his claims was available to Tackman; (2) Defendants' own actions in interfering with Tackman's attempts to exhaust estop Defendants from prevailing on their exhaustion defense; and (3) Tackman's failure to exhaust is justified by special circumstances. Plaintiff's Exhaustion Requirements Memorandum at 8-9.

Defendants, in response to Tackman's recent arguments in opposition to summary judgment, maintain that Tackman failed to avail himself of the available administrative remedies, namely, the IGP.  Defendants' Exhaustion Requirements Memorandum at 1-4.  Defendants further maintain that the record fails to establish any issues of fact that Tackman's failure to exhaust is excusable based on any "special circumstances," Defendants' Exhaustion Requirements Memorandum at 4-6, that the various letters Tackman wrote to prison officials regarding his claims are insufficient to constitute an attempt to informally resolve his grievances, *id.* at 7-9, and that Tackman has not demonstrated Defendants thwarted his efforts to properly grieve his ad seg status and resulting SHU confinement, *id.* at 10-12.  Accordingly, Defendants urge the court to grant summary judgment in their favor on the basis that Tackman failed to exhaust administrative remedies relative to his claims.  *Id.* at 13-14.

The PLRA provides, in pertinent part, that

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

This mandatory administrative exhaustion requirement applies to actions seeking relief, including equitable relief, that may not be available in prison administrative proceedings, such as money damages, *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citing *Booth v. Churner*, 532 U.S. 731 (2001)), as well as to all civil actions with respect to prison conditions and individual instances of prison misconduct, *Webb v. Goord*, 340 F.3d 105, 112 (2d Cir. 2003), including alleged denials of due process for which either injunctive remedies or damages are sought.  *Ortiz v. McBride*, 323 F.3d 191, 195-96 (2d Cir. 2003).  A "civil action with respect to prison conditions" is defined under the PLRA as

> any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2).

Based on the PLRA's language, Tackman's federal civil rights claims fall within this definition and, as such, the PRLA's exhaustion requirement applies.  *See Ortiz*, *supra*, 323 F.3d at 195-96 (remanding to district court for determination as to whether inmate plaintiff exhausted administrative remedies regarding claims challenging confinement in SHU violated Eighth and Fourteenth Amendment due process rights).

The Second Circuit has recently articulated a three-part inquiry for district courts to follow when determining whether an inmate plaintiff has exhausted administrative remedies prior to filing a federal court action challenging prison conditions.  Specifically,

> a three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a).  Depending on the inmate's explanation for the alleged failure to

exhaust, the court must ask whether administrative remedies were in fact 'available' to the prisoner.  The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.  If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their nonexhaustion defense, but that the plaintiff nevertheless did not exhaust administrative remedies, the court should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'

*Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004).

Furthermore, the Second Circuit has observed that administrative remedies may be "informally" exhausted.  In particular, insofar as 7 N.Y.C.R.R. § 701.3(a) "advise[s] inmates 'to attempt to resolve a problem on [their] own' before resorting to formal procedures, . . .  an inmate who obtains a favorable resolution of his complaint through informal processes has exhausted available administrative remedies under the DOCS scheme."  *Hemphill*, *supra*, 380 F.3d at 682 n. 4 (quoting 7 N.Y.C.R.R. § 701.3(a), and citing *Marvin v. Goord*, 255 F.3d 40, 43 n. 3 (2d Cir. 2001)).  Thus, the court considers whether the record establishes that Tackman either formally or informally exhausted administrative remedies.

### a.      Failure to Exhaust Administrative Remedies

The parties do not dispute that a formal procedure for an inmate to seek administrative relief for a grievance, arising at DOCS's facilities and applicable to Tackman as of 1989, when Tackman was first designated as an ad seg inmate, existed. In New York, the administrative remedy required to be exhausted prior to commencing

an action challenging prison conditions consists of a three-step review process. *Reyes v. Punzal*, 206 F.Supp.2d 431, 432 (W.D.N.Y. 2002). Specifically, a grievance must initially be submitted to the IGRC, comprised of inmates and DOCS employees, for investigation and review. *Id*. If the inmate disagrees with IGRC's decision, the inmate may appeal the decision to the superintendent of the relevant correctional facility. *Id*. The superintendent's decision is further appealable to the CORC which makes the final administrative decision. *Id*. All three levels of review must be exhausted before an inmate plaintiff may seek § 1983 relief in federal court. *Id*. (citing cases).

In particular, the specific procedures and time limits governing the internal IGP are set forth in 7 N.Y.C.R.R. § 701.7,[16] and are essentially restated in DOCS Directive 4040. First, an inmate is required to filed his grievance within 14 days of an alleged occurrence. 7 N.Y.C.R.R. § 701.7(a)(1); DOCS Directive 4040.V.A.1. Once filed, the "IGRC representatives shall have up to seven working days to review a grievance and resolve it informally." 7 N.Y.C.R.R. § 701.7(a)(3); DOCS Directive 4040.V.A.2. If no such resolution is reached, the IGRC must hold a hearing "within seven working days after receipt of the grievance." 7 N.Y.C.R.R. § 701.7(a)(4); *see* DOCS Directive 4040.V.A.3 ("[a] hearing, if necessary, must take place within seven (7) working days after receipt of the grievance."). Following the hearing, "[a] written decision, including the reasons therefore, must be communicated to the grievant and any direct party

---

[16] DOCS Directives are published by or on the authority of the Commissioner of the Department of Correctional Services and are intended to implement and supplement various parts of New York Correction Law, as Title 7 of the Official Compilation of Codes, Rules and Regulations of the State of New York, and other pertinent laws and regulations. DOCS Directive # 1(I). A copy of DOCS Directive 4040, describing the Inmate Grievance Program and the procedures for filing an inmate grievance, the only such directive relevant to this case, is attached as Exh. A to the Struebel Declaration.

within two working days." 7 N.Y.C.R.R. § 701.7(a)(4)(v); DOCS Directive 4040V.A.4.  A

grievance may also be dismissed by the IGRC if it determines after a hearing that, *inter

alia*, "the grievant has made no effort to resolve his/her complaint through existing

channels." 7 N.Y.C.R.R. § 701.7(a)(5)(i)(a); DOCS Directive 4040.V.A.5.a.  Upon

receiving the IGRC's written response to a grievance, the inmate may appeal the

IGRC's decision to the superintendent of the facility by filing an appeal with the IGP

clerk and if no such appeal is filed, the grievant is presumed to have accepted the

IGRC's recommendation.  7 N.Y.C.R.R. § 701.7(b)(1); DOCS Directive 4040.V.B.1.

When an appeal is filed, the IGP must transmit the grievance papers, and all relevant

supplemental papers, to the superintendent within one working day after receipt of the

appeal.  7 N.Y.C.R.R. § 701.7(b)(2); DOCS Directive 4040.V.B.2.  The superintendent's

treatment of the appeal then varies depending on whether the grievance concerns a

departmental policy/directive or an institutional issue.  7 N.Y.C.R.R. § 701.7(b); DOCS

Directive 4040.V.B.

If a departmental matter, such as a policy or procedure contained in a relevant

directive, is at issue, then the superintendent, within five working days of receipt of the

appeal, must forward the relevant papers and a recommendation regarding the

challenged policy to the IGP supervisor for forwarding to the CORC which is required to

render a decision in accordance with the third step described below.  7 N.Y.C.R.R. §

701.7(b)(4); DOCS Directive 4040.V.B.3.a.  If an institutional problem is raised, such as

a condition of confinement or a challenge to a disciplinary action taken against the

inmate, the superintendent must render a decision and transmit such decision, with

stated reasons, within 10 working days of the appeal's receipt.  7 N.Y.C.R.R. §

701.7(b)(5); DOCS Directive 4040.V.B.3.b.  If the superintendent's decision is not favorable to the inmate grievant, the grievant may appeal the superintendent's decision to the CORC by filing an appeal with the IGP clerk within four working days of receipt of the superintendent's written response.  7 N.Y.C.R.R. § 701.7(c)(1); DOCS Directive 4040.V.B.5.  The IGP clerk must transmit the appeal and the accompanying papers, within one working day after its receipt, to the IGP supervisor who must forward the appeal to the CORC within five working days.  7 N.Y.C.R.R. § 701.7(c)(2); DOCS Directive 4040.V.B.5.  The CORC then has 20 working days from the receipt of the appeal papers to render a written decision with stated reasons and to transmit the decision to the grievant.  7 N.Y.C.R.R. § 701.7(c)(4); DOCS Directive 4040 V.C.2.

> Further, extensions of the time limits set forth under 7 N.Y.C.R.R. § 701.7
>
> may be requested at any level of review, but such extensions may be granted only with the consent of the grievant.  *Absent such extension, matters not decided within the time limits may be appealed to the next step*.

7 N.Y.C.R.R. § 701.8 (italics added);*see* DOCS Directive 4040 V.G. Accordingly, even assuming that an inmate received no timely official response as contemplated by the regulations to a grievance at any stage in the inmate grievance process, the inmate could nevertheless appeal such grievance to the next level, and the failure to do so constitutes a failure to exhaust his administrative remedies as required under the PLRA.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy and effective'"); *Reyes, supra*, 206 F.Supp.2d at 433 (observing that even if the inmate plaintiff had never received any response to his inmate grievance, he could still pursue other avenues of administrative relief and

quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)) (underlining added).

In the instant case, the record demonstrates that Tackman did not formally exhaust all of his available administrative remedies as to Grievance No. 38414-99,[17] the only grievance relevant to his claims in this action, under 7 N.Y.C.R.R. § 701.7 and DOCS Directive 4040.  As with the analysis of Tackman's alleged attempts to exhaust, either formally or informally as Tackman now argues, administrative remedies relevant to his claims, the court sets forth the various procedures by which Tackman's ad seg status has been reviewed.

At all times pertinent to this action, the relevant DOCS regulation, 7 N.Y.C.R.R. § 301.4 governing designation of an inmate's ad seg status, provided that whenever an inmate is involuntarily assigned to SHU for one of the reasons specified for ad seg status, "a hearing shall be conducted within 14 days of an inmate's admission to aggregated segregation."  7 N.Y.C.R.R. § 301.4(a).  The regulation recognizes that "[a]dministration segregation results from a determination by the facility that the inmate's presence in the general prison population would pose a threat to the safety and security of the facility."  7 N.Y.C.R.R. § 301.4(b).  Inmates housed in SHU on ad seg status were to have such "status reviewed every seven days for the first two months, and every 30 days thereafter, by a three-member committee consisting of a

---

[17] With regard to Grievance No. A 32082-95, there is no copy of such grievance in the record. Rather, as the undersigned has already found, "[t]he only evidence in the record regarding Grievance No. A 32082-95 is a copy of Attica's Superintendent' Decision, dated September 11, 1995, denying the grievance.  That the decision was issued by Attica's superintendent demonstrates that [Tackman] exhausted the first two steps of his administrative remedies.  It does not, however, demonstrate that [Tackman] 'likely' proceeded to the final step of the administrative remedies, *i.e.*, appealing the Superintendent's denial to the CORC, in contrast to [Tackman's] assertion."  September 15, 2003 Decision and Order and Report and Recommendation at 24-25 (citing and quoting Plaintiff's Memorandum at 8).

representative of the facility executive staff, a security supervisor, and a member of the guidance and counseling staff." 7 N.Y.C.R.R. § 301.4(d). The resulting ad seg status review reports were to be "forwarded, in writing, to the superintendent for final determination." *Id*. Finally, the regulation required that "[w]hen deemed appropriate, the inmate will be evaluated and recommended for transfer to a facility where it is determined the inmate may be programmed into general population." 7 N.Y.C.R.R. § 301.4(e).

Effective January 1, 2003, 7 N.Y.C.R.R. § 301.4(d) was amended to provide that "[a]n inmate in administrative segregation status shall have such status reviewed every 60 days," and the review procedures were also amended. Specifically, the review committee would continue to consist of "a representative of the facility executive staff, a security supervisor, and a member of the guidance and counseling staff," who were charged with examining the inmate's institutional record, and preparing and submitting to the superintendent "a report setting forth the following: (i) reasons why the inmate was initially determined to be appropriate for administrative segregation; (ii) information on the inmate's subsequent behavior and attitude; and (iii) any other factors that they believe may favor retaining the inmate in or releasing the inmate from administrative segregation." 7 N.Y.C.R.R. § 301.4(d)(1)(i) - (iii). The superintendent, upon receiving the report and any written statement from the inmate, and unless the superintendent is directed by DOCS Deputy Commissioner to refer the matter to central office review, shall "make a determination to retain the inmate in or release the inmate from administrative segregation." 7 N.Y.C.R.R. § 301.4(d)(2).

Also newly added to 7 N.Y.C.R.R. § 301.4 is a provision stating that

> [w]here the deputy commissioner for correctional facilities has notified the superintendent that an inmate in administrative segregation is to receive central office review, the superintendent or designee shall as part of every 60-day review thereafter, refer the committee report, and any written statement received from the inmate, to a three-member central office committee consisting of a representative from the office of facility operations, a member of the department's inspector general's staff, and an attorney from the office of counsel.  The central office committee shall then complete its review and forward the paperwork along with its recommendation to the deputy commissioner for correctional facilities.  Upon receipt of the materials from the central office committee, including any written statement received from the inmate, the deputy commissioner shall make the determination to retain the inmate in or release the inmate from administrative segregation.

7 N.Y.C.R.R. § 301.4(d)(3).

The revised regulation further provides,

> [a]s part of every 60-day review, whenever a determination is made to continue the inmate in administrative segregation, the superintendent or, as applicable, the deputy commissioner for correctional facilities, shall provide a notice to the inmate that states the reason(s) for the determination and includes the following statement:
> 'A determination has been made to continue your administrative segregation status for the reason(s) stated in this notice.  Prior to your next 60-day review, you may write to the superintendent or designee to make a statement regarding the need for continued administrative segregation.  The reason(s) stated in this notice, any written statement that you submit, as well as your overall custodial adjustment will be considered during the next scheduled review.'

7 N.Y.C.R.R. § 301.4(d)(4).

Tackman's ad seg status was last reviewed by the ASRC at the facility level, *i.e.*, pursuant to 7 N.Y.C.R.R. § 301.4(d)(1), on January 3, 2003.  On January 7, 2003, DOCS Deputy Commissioner Lucian J. LeClaire, Jr., designated Tackman as a "Central Office Administrative Segregation Review inmate," thereby subjecting Tackman's ad seg status to central office review, *i.e.*, by the CORC according to the newly enacted provisions of 7 N.Y.C.R.R. § 301.4(d).  Second Eagen Declaration ¶ 11 and Exh. A. After being designated for central office review, Tackman first received central office

38

review of his ad seg status by the CORC on March 6, 2003.  Second Eagen Declaration ¶ 13.  Since then, Tackman's ad seg status has been subjected to central office review, in accordance with the regulation, with CORC recommending Tackman's ad seg status be continued because Tackman's history of escape attempts demonstrates Tackman's placement in the general prison population would pose a risk to the prison facility's safety and security.

Reviews of an inmate's ad seg status by the ASRC at the facility level are grievable through the IGP pursuant to the procedure set forth in 7 N.Y.C.R.R. § 701.7 and DOCS Directive 4040.  As 7 N.Y.C.R.R. § 701.3(e)(1) precludes IGRC review of decisions or dispositions rendered outside the facility, central office review of an inmate's ad seg status by the CORC, which is conducted outside the prison facility at DOCS central office, is not grievable through the IGP, and Defendants concede that the central office reviews of Tackman's ad seg status conducted after January 7, 2003 are not grievable.  Defendants' Exhaustion Requirements Memorandum at 3-4.[18] Nevertheless, the record unambiguously establishes that Tackman failed to avail himself of all available administrative remedies applicable to Grievance No. 38414-99.[19]

---

[18] "The policies, rules and procedures of any such nongrievable programs or procedures, however, may be the subject of a grievance [pursuant to the IGP]."  7 N.Y.C.R.R. § 701.3(e)(2). Significantly, in the instant action Tackman does not challenge the policies, rules or procedures of his ad seg status central office reviews after January 3, 2003, the date of his last ASRC ad seg status review.

[19] Although prior to the instant action Tackman also filed Grievance No. A 32082-95 challenging his initial placement in SHU on ad seg status, which was denied, the issues raised in Grievance No. A 32082-95 have been the subject of a civil rights action.  *See Tackman v. Coughlin*, 90-CV-1079 (N.D.N.Y.).  Copies of Tackman's complaint and the relevant court orders denying the claims are attached to Defendants' Exhaustion Requirements Memorandum as Appendices A, B, C, D, E, F, and G.  Such evidence that Tackman exhausted administrative remedies relevant to Grievance No. A 32082-95, however, is irrelevant and has no probative effect on Tackman's claims in the instant case.  Further, insofar as Tackman asserts he is challenging in this action his initial placement in SHU on ad seg status, Plaintiff's Exhaustion Requirements Memorandum at 9 ("To the extent Plaintiff challenges his placement

Specifically, after filing Grievance No. 38414-99, on March 2, 1999, which complained that Defendants had not provided Tackman with copies of the ASRC's ad seg status review reports in violation of 7 N.Y.C.R.R. § 301.4(d), the IGRC, on March 10, 1999, responded by advising Tackman that his grievance was dismissed pursuant to DOCS Directive 4040.V.A.5.a.1 (providing for dismissal of an inmate grievance where "the inmate has made no effort to resolve the complaint through existing channels"), and that Tackman "needs to address this issue to Sgt. Buehler, Lt. J. Bea, Capt. R.K. James, and Dept. Supt. of Security, J. Conway, in that order." Struebel Declaration Exh. F. After receiving the IGRC's written response to Grievance No. 38414-99, it is undisputed that Tackman did not, as required under the IGP, 7 N.Y.C.R.R. § 701.7(b)(1); DOCS Directive 4040.V.B.1, appeal the IGRC's decision to the superintendent of the Attica facility by filing an appeal with the IGP clerk. Accordingly, it also cannot be disputed that Tackman, by failing to timely file an appeal of the IGRC's written response, is considered, under the IGP, to have accepted the IGRC's recommendation as to Grievance No. 38414-99. 7 N.Y.C.R.R. § 701.7(b)(1); DOCS Directive 4040.V.B.1. Tackman does not contend otherwise.

Moreover, Tackman overlooks a crucial factor regarding his attempts to exhaust his administrative remedies as pertinent to this lawsuit. Specifically, the substantive portion of Grievance No. 38414-99 states, in its entirety, that

I would like [to] put in a grievance . . .

---

in ad seg, as opposed to the conditions of his confinement, that appeal constituted exhaustion of his administrative remedies for purposes of the PLRA") (underlining in original), that Tackman exhausted administrative remedies as to Grievance No. A32082-95 does not permit, as a matter of *res judicata*, Tackman to raise such a challenge in the instant action, as such claim has already been, or could have been, litigated in *Tackman v. Coughlin*, *supra*.

> Pursuant to 7 NYCRR [§] 301.4[D] every 30 day's [*sic*] my administrative segregation should be review[ed], but over the past 5 years, I <u>haven't</u> <u>received</u> <u>any</u> <u>notice</u> <u>that</u> <u>such</u> <u>review</u> <u>was</u> <u>conducted</u> pursauist [*sic*] to 7 NYCRR *supra*.

> Every 30 days I am <u>suppose[d]</u> <u>to</u> <u>get</u> <u>in</u> <u>'writing'</u> <u>what</u> <u>the</u> <u>result</u> <u>was</u> at these hearing[s] and I don't get any.

> Could you please look into this for me[?]

Grievance No. 38414-99, Struebel Declaration Exh. F (underlining added).

Significantly, a plain reading of Grievance No. 38414-99 reveals that such grievance

challenges only Defendants' alleged failure to provide him with written notice of the

results of his ad seg review by the ASRC that formerly, prior to 2003, was required to

be conducted pursuant to 7 N.Y.C.R.R. § 301.4(d).

In contrast, Tackman, in the instant action, does not challenge Defendants

failure to provide him with written notification of the results of his ad seg status review

prior to 2003 when Tackman was designated to receive central office review of his ad

seg status but, rather, seeks

> damages and injunctive relief for violation of Plaintiff's right to due process relating to his continued confinement in Administrative Segregation and the denial of any meaningful opportunity to be released on parole; and for violating Plaintiff's right to be free from cruel and unusual punishment relating to the deterioration of Plaintiff's physical condition resulting from his continued confinement in Administrative Segregation for more than ten years and the failure of defendants to provide adequate medical care for that deterioration; and for violation of Plaintiff's right to free association reasonably constrained by security concerns, arising from the denial of more than one visit per week.

Second Amended Complaint ¶ 1.

Simply put, in the instant action, Tackman challenges the constitutionality, *i.e.*, the

alleged lack of due process associated with his ad seg review at the facility level on the

basis that such review, prior to 2003, did not provide Tackman with the opportunity to

appear or to present evidence before the ASRC, an issue that, by the exact terms of

Tackman's grievance, *i.e.*, Grievance No. 38414-99, was not raised, either explicitly or

even fairly implied, as the grounds of the grievance pursuant to the IGP.  Second

Amended Complaint ¶ 1.  Rather, as the text of the grievance states, Tackman's

administrative complaint was that he did not receive notice of the IGRC decision as to

his continued ad seg SHU status.  Grievance No. 38414-99, Struebel Declaration Exh.

F.  Further, since January 7, 2003, Tackman's ad seg status has been subject to

central office review by the CORC, for which the procedures permit Tackman to present

evidence on his behalf, rather than to ad seg status review at the facility level where the

procedures did not permit Tackman to present such evidence to the ASRC.  *See* 7

N.Y.C.R.R. § 301.4(d)(3) (permitting inmate on ad seg status designated for central

office review to submit statement on his behalf for inclusion in review by the CORC, but

silent as to permitting an ad seg status inmate designated for facility level review to

submit evidence on his behalf to the ASCR).  Moreover, as ad seg inmates subject to

central office review pursuant to the newly added regulatory provision are required

recipients of copies of such determinations, 7 N.Y.C.R.R. § 301.4(d)(4), upon being

designated, on January 7, 2003, for central office review, Tackman received all the

injunctive procedural relief he sought in Grievance No. 38414-99.  Any attempt to read

Grievance No. 38414-99 as covering the procedural due process claims Tackman now

raises in the Second Amended Complaint, specifically, that Tackman was denied

procedural due process with regard to his continued confinement in SHU on ad seg

status, and which were never presented in a grievance to the IGRC pursuant to the

IGP, cannot reasonably be supported.

Nor is there any merit to Tackman's assertion, Plaintiff's Exhaustion Requirements Memorandum at 7-9, that he informally exhausted his administrative remedies relative to the instant claims because Tackman's purported informal exhaustion attempts also fail to raise the particular claims at issue in the instant action, with the exception of Tackman's claim that he was never provided with the results of the ASCR's periodic review of Tackman's ad seg status prior to 2003.  Second Amended Complaint ¶ 72 ("Plaintiff has never been advised of the results of the ASCR's weekly, then monthly meetings concerning his status.").  As stated, the Second Circuit recognizes that resolution of a grievance through informal procedures will suffice to exhaust administrative remedies. *Hemphill*, *supra*, 380 F.3d at 682 n. 4; *Marvin*, *supra*, 255 F.3d at 43 n. 3.  Here, however, the correspondence between Tackman and various DOCS officials, on which Tackman relies in support of his assertion that he informally exhausted administrative remedies, are barren of any reference to the claims for which Tackman seeks relief in the instant action, as pleaded in the Second Amended Complaint, and, thus, Tackman's informal exhaustion theory cannot avoid summary judgment, except as to Defendants' failure to provide Tackman with copies of the ASRC's as seq status review reports.

In particular, in a memorandum dated March 12, 1999 ("March 12, 1999 Memorandum"), Captain R. James advised Tackman that "[y]our Administration Segregation reviews are conducted as appropriate and you are not a required recipient. If you would like a copy, you must contact our F.O.I.L.  Officer, the Inmate Record Coordinator."  Plaintiff's Exh. D.  In Tackman's March 14, 1999 Letter to Defendant Lieutenant Bea, Plaintiff's Exh. B, Tackman inquires at to why, "[f]or the last 5 years, I

have not been getting my adm. seg. 30 day review papers . . . . Please look into this for

me."  Tackman further complains that after being housed in SHU on disciplinary status

in 1993, he was returned to SHU on ad seg status with no new hearing having been

held, which Tackman maintains was illegal.  Plaintiff's Exh. B.  In his March 15, 1999

Letter to Defendants Sergeant Buehler, Lieutenant Bea, Captain James and

Superintendent Conway, Plaintiff's Exh. C, Tackman writes

> I would like in written [*sic*] a[n] answer to the below . . .
>
> Pursuant to 7 NYCRR 301.4[D]
>
> Every 30 days my administrative [se]gregation should be review[ed], but over the pass [*sic*] 5 years, I haven't received any notices in 'writing' that such reviews was [*sic*] conducted pursauist [*sic*] to 7 NYCRR supra.
>
> I have written about this some years ago to Dept Dornnelly [*sic*] and he never wrote me back about this either, now could at least one of yous [*sic*] please write me back about this?

March 15, 1999 Letter, Plaintiff's Exh. C.

A handwritten notation by an unidentified author at the bottom of the letter states "[y]our

Admin. Seg. reviews are conducted as appropriate & you are not a required receipient.

[*sic*] If you would like a copy, you must contact our foil officer, the IRC."  *Id*.

In a letter to Deputy Superintendent Conway dated March 26, 1999 ("March 26,

1999 Letter"), Tackman explained that he was writing in accordance with Lt. Bea's

instructions to request an explanation as to why Tackman had not been provided with

any papers regarding his periodic ad seg status review.  Plaintiff's Exh. E.  Tackman

also stated that he was placed in SHU on disciplinary status for an unspecified period of

time, and that after having fulfilled his disciplinary status SHU confinement, Tackman

was returned to SHU on ad seg status, without a new hearing being held to determine

whether such placement was correct.  Plaintiff's Exh. E.

By letter to Attica's Superintendent dated April 18, 1999 ("April 18, 1999 Letter"), Tackman advised that he had filed several grievances pertaining to the conditions to which Tackman was subjected "concerning [his] placement in SHU," but that such grievances had neither been answered, nor their receipt acknowledged.  Plaintiff's Exh. F.  Tackman further stated "[p]lease accept this as a [*sic*] appeal."  Plaintiff's Exh. F.

By letter to "IGRC Supervisor" dated May 10, 1999 ("May 10, 1999 Letter"), Tackman stated that he had been unlawfully confined in administrative segregation since 1989 and, as such, had been separated from the general prison population since arriving at Attica in 1993.  Plaintiff's Exh. G.  Tackman again complained that he has not received copies of any of the ASRC's ad seg status review reports recommending that Tackman remain in SHU on ad seg status and that, after serving some time in SHU on disciplinary status, he remained in SHU on ad seg status without receiving a new hearing.  *Id*.  Tackman makes additional complaints, including that while housed in SHU on ad seg status, he has been denied medical and dental care, art supplies and other prison privileges, including contact visits and participation in prison programs and religious services.  *Id*.  According to Tackman, because some Defendants, including "Sgt. Buehler, Lt. Bea, Capt. R. James and Mr. Conway," would only answer Tackman's letters by talking to him, Tackman made verbal complaints to those Defendants while they conducted "rounds" of the SHU gallery in which Tackman was housed.  *Id*. Nevertheless, Defendants continued to deny Tackman's requests to be released from SHU and returned to the general prison population, to be sent copies of his ad seg status review reports, or provided with medical and dental care and any other privileges

enjoyed by inmates in the general prison population.  *Id*.  Tackman requested that he

be released from SHU to the general prison population and his confinement in SHU be

declared illegal, that future reviews of his ad seg status be "meaningful and clearly state

the reason" for his continued SHU confinement, and that he receive "proper dental,

medical care and programs while in S.H.U."  Plaintiff's Exh. G.

In a letter to the CORC, dated June 8, 1999 ("June 8, 1999 Letter"), Tackman

wrote that he has written several grievances about his "illegal placement" in SHU, and

that all his complaints had been dismissed or ignored.  Plaintiff's Exh. H.  Tackman

requested assistance "on this mather [*sic*], or in the alternative accept this as a [*sic*]

appeal."  *Id*.

On December 6, 1999, Tackman wrote Superintendent Herbert ("December 6,

1999 Letter" requesting Herbert's assistance in the "great mystery" as to why Tackman,

who had never killed anyone, had been confined in SHU on ad seg status for more than

10 years, whereas prison inmates who had killed other inmates were confined in SHU

for only five to seven years for such crimes.  Plaintiff's Exh. I.  Tackman requested a

response in writing.  *Id*.  Tackman also complained about being denied receipt of a

package of art supplies, *i.e.*, nine sheets of drawing paper.  *Id*.  A handwritten notation

at the bottom of the letter directs Attica Deputy Superintendent Conway to reply on

Superintendent Herbert's behalf.  *Id*.  Accordingly, Deputy Superintendent Conway, in a

Memorandum dated December 10, 1999 ("December 10, 1999 Memorandum"),

advised Tackman that Superintendent Herbert was reviewing Tackman's file so that "he

can begin to know you as well as I do," that Conway's "repeated attempts to get

[Tackman] moved or your status changed have, as you know, been unsuccessful," but

that Conway had approved Tackman's receipt of his drawing paper.  Plaintiff's Exh. J.

Superintendent Herbert was copied on the December 10, 1999 Memorandum.  *Id*.  A

handwritten notation appearing near the bottom of the December 10, 1999

Memorandum states that "upon review, I cannot concur w/ releasing him from Admin

Seg - he remains," followed by the note's author's apparent initials which are illegible.

*Id*.

Despite the plethora of letters Tackman wrote, purportedly in an attempt to

informally exhaust his administrative remedies, in none of the letters on which Tackman

now relies in support of his informal exhaustion argument does Tackman mention the

due process issues raised in the instant action, *i.e.*, whether the ad seg status review

procedures, by which the ASRC repeatedly recommended continuation of Tackman's

ad seg status and resulting confinement in SHU, prior to 2003, violated Tackman's civil

rights, particularly, his right to procedural due process.  Thus, just as Tackman's

Grievance No. 38414-99 failed to raise the issues on which the instant action is

predicated, Discussion, *supra*, at 41-43, Tackman's subsequent correspondence with

DOCS officials fails to informally exhaust his administrative remedies, as recognized by

the Second Circuit, *Hemphill*, *supra*, 380 F.3d at 682 n. 4; *Marvin*, *supra*, 255 F.3d at 43

n. 3, by also failing to raise such issues. The unreported cases Tackman cites in further

support of this position also fail to persuade otherwise as in each of those cases, the

plaintiff inmate's attempt to informally exhaust administrative remedies involved placing

the issues relevant to the litigation before the defendants by some means other than

through the IGP.  *See* July 29, 2005 Letter of Anna Marie Richmond, Esq. (citing

cases).  The undisputed evidence in this record therefore establishes Tackman failed to

administratively exhaust either informally or through the DOCS grievance process, IGP,

except as to Defendants' failure to provide copies of his ad seg status review reports,

any of the claims asserted in the Second Amended Complaint.

As to Tackman's claim that he was denied due process when Defendants' failed

to provide him with copies of his ad seg status review reports, the record demonstrates

that insofar as such claim could have been resolved through informal challenges and,

thus, informally exhausted, *Hemphill*, *supra*, 380 F.3d at 682 n. 4; *Marvin*, *supra*, 255

F.3d at 43 n. 3, Tackman was so advised how to informally resolve the claim, but that

Tackman never attempted to informally resolve the claim as suggested by Defendants.

In particular, the March 10, 1999 IGRC response Tackman received to Grievance No.

38414-99 advised that such "[g]rievance is dismissed per Directive 4040 V-A-5a-1.

Grievant needs to address this issue to address this issue to Sgt. Buehler, Lt. J. Bea,

Capt. R.K. James and Dept. Supt. of Security, J. Conway, in that order."  March 10,

1999 IGRC Response.[20]  Accordingly, Tackman, on March 15, 1999, wrote a letter to

Sgt. Buehler, Lt. J. Bea,  Capt. R.K. James and Dept. Supt. of Security J. Conway.

Plaintiff's Exh. C.  A handwritten notation at the bottom of the March 15, 1999 Letter

advised Tackman that "[y]our Admin Seg reviews are conducted as appropriate & you

are not a required recipient.  If you would like a copy, you must contact our foil officer,

the IRC."  Plaintiff's Exh. C (underlining added).  Similarly, in a separate response to

Tackman's Grievance No. 38414-99, Capt. R. James advised that "[y]our [Tackman's]

Administration [*sic*] Segregation reviews are conducted as appropriate and you are not

---

[20] Struebel Declaration Exh. F.

a required recipient.  If you would like a copy, you must contact our F.O.I.L. Officer, the Inmate Record Coordinator."  Plaintiff's Exh. D (underlining added).

Surprisingly, in light of the rigor with which Tackman pursues the instant action, the record is devoid of any indication that Tackman ever troubled to contact the Inmate Records Coordinator to obtain copies of his ad seg reviews which are at the heart of his due process claim.  Had Tackman, as instructed, made a F.O.I.L. request to the Inmate Records Coordinator for copies of his ASRC ad seg status review reports, and had Tackman, in response to such request, received copies of his ad seg status review reports, Tackman would then have informally resolved the matter.  Absent any indication that Tackman contacted the Inmate Records Coordinator, as directed by Defendant Captain James and another identified source, Tackman's contention that he informally exhausted this claim is without merit.

As to Tackman's contention that he has been denied medical and dental care, the only evidence Tackman submits to establish exhaustion of administrative remedies relative to such claims are copies of three written requests to Attica's dentist, dated July 10, 1994, June 15, 1995 and September 22, 1997, to have his teeth cleaned.  Plaintiff's Exh. K.  Tackman does not explain how, even if the dentist ignored such requests, Defendants' failure to see that Tackman's teeth were cleaned arises to a violation of Tackman's civil rights.  Furthermore, given that such letters were written to Attica's dentist, who has not been sued, this claim fails to demonstrate the requisite personal involvement of any of the named defendants.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (to establish liability under § 1983, plaintiff must show defendant was personally involved in the alleged constitutional violation).  *Compare McKenna v.*

49

*Wright*, 386 F.3d 432, 437 (2d Cir. 2004) (defendants alleged to have participated in denying inmate plaintiff medical care for hepatitis C virus, either directly or indirectly by enforcing or allowing continuation of policies resulting in denial of treatment, were sufficiently personally involved to support liability under § 1983).

Accordingly, Tackman has failed to exhaust administrative remedies relative to his instant claims and summary judgment should be GRANTED in favor of Defendants. Although the undersigned recommends granting summary judgment in favor of Defendants on Tackman's federal claims, because Tackman failed to exhaust, either formally or informally, administrative remedies relative to such claims, as the action is before the court for a Report and Recommendation, Tackman's alternative arguments in opposition to summary judgment are also considered.

### b.       Availability of Inmate Grievance Procedure

As an alternative ground for denying summary judgment should it be determined that Tackman failed to exhaust administrative remedies, Tackman asserts, Plaintiff's Exhaustion Requirement Memorandum at 9-11, that the IGP was unavailable to Tackman such that he was excused from administratively exhausting such claims as required by the PLRA.  In support of this argument, Tackman references the March 3, 2004 IGRC Response ("March 3, 2004 IGRC Response") received regarding Tackman's Grievance filed on March 1, 2004, Grievance No. 46545-04 ("Grievance No. 46545-04")[21] in which Tackman challenges his continued ad seg status and SHU

---

[21] Copies of Grievance No. 46545-04 and the March 3, 2004 IGRC Response are attached as Exhibit A to Tackman's Notice of Motion to Supplement the Record (Doc. No. 132).

confinement, asserting that after serving a disciplinary status term in SHU in 1993, he

was not given a new hearing to determine whether he should be returned to SHU on ad

seg status, or released to the general prison population.  Grievance No. 46545-04 at 1.

Tackman also claimed his ad seg status reviews were not meaningful and that he was

denied dental care and the opportunity to participate in programs available to inmates

within the general prison population.  *Id*.  Tackman further challenged his loss of good

time and placement on a restricted diet for 14 days.  *Id*. at 1-2.  Defendants argue in

opposition that only the adequacy those review of Tackman's ad seg status conducted

between 1996 and 1999 are challenged in the instant action, and that all such reviews

were conducted at the facility level and were grievable through the IGP.  Defendants'

Exhaustion Requirements Memorandum at 2-4.

In support of this argument, Tackman points to the IGRC's response to

Grievance No. 46545-04, advising that "Admin. Seg. Hearings have their own appeal

and review mechanism and cannot be changed through the Grievance Office."

Plaintiff's Exhaustion Requirements Memorandum at 9 (citing March 3, 2004 IGRC

Response).  Tackman thus maintains the March 3, 2004 IGRC Response "implicitly

invokes [DOCS] Directive 4040 § 111(E)," which provides IGP was not available for

redress of his claims.  Plaintiff's Exhaustion Requirements Memorandum at 10.

Tackman, however, has confused the ASRC's facility level review of his ad seg

status, which is grievable through the IGP pursuant to the procedure set forth in DOCS

Directive 4040, with the central office review of his ad seg status by the CORC, which is

conducted outside the prison facility at DOCS's Central Office and, as such, is not

grievable through the IGP.  Significantly, on January 7, 2003, Tackman was designated

as a "Central Office Administrative Segregation Review inmate," thereby subjecting

Tackman's ad seg status  to "central office review," *i.e.*, review by the CORC according

to the newly enacted provisions of 7 N.Y.C.R.R. § 301.4(d).  Thus, only those reviews

of Tackman's ad seg status conducted after Tackman was designated for central office

review are not grievable through the IGP.  As Tackman's due process claim can relate

only to the period of ad seg status prior to 2003, Tackman's argument that no

administrative remedies were available to administratively exhaust Tackman's claims is

without merit.


### c.      Alleged Interference with Exhaustion Attempts

Tackman also asserts that if administrative remedies were in fact available to

him relative to the instant claims, Defendants are estopped from asserting Tackman's

failure to exhaust administrative remedies as an affirmative defense[22] because

Defendants, prison officials, "routinely interfered with his efforts to file grievances

concerning his ad seg status."  Plaintiff's Exhaustion Requirements Memorandum at 11-

12.  In support of  this argument, Tackman points to his affidavit statement that he

"attempted to file many grievances over the years, although [he] seldom, if ever got

responses to those grievances."   Plaintiff's Affidavit ¶ 6.  Tackman also submits the

affidavit of another inmate confined in Attica's SHU, one Derrick Hamilton ("Hamilton

Affidavit"), Plaintiff's Exh. W, who stated that he had "witnessed and observed Mr.

---

[22] The Second Circuit has held that the PLRA's administrative exhaustion requirement is an affirmative defense, which must be raised or it is waived, rather than a jurisdictional prerequisite to suit, and is also subject to estoppel.  *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (citing cases).

Tackman submit many grievances challenging the conditions of his SHU placement and continued confinement.  These grievances were made to the I.G.R.C./Superintendent and C.O.R.C."   Hamilton Affidavit ¶ 4.  Hamilton further attested that he had "personally heard discussions between Mr. Tackman and George Struebell on several different occasions how his grievances were either being ignored or taken out of the mail," and "witnessed Ronald Tackman place copies of his grievance complaints into the hands of Mr. Struebell."  *Id.* ¶ 5.  Defendants argue in opposition that these assertions are inconsistent with Tackman's earlier representations that Tackman routinely sent copies of his correspondence with DOCS officials to his mother's home, yet failed to produce such copies to corroborate Tackman's assertion that he attempted to exhaust his administrative remedies, or to describe the contents of any such grievance which Tackman asserts was confiscated and destroyed by Defendants.  Defendants' Exhaustion Requirements Memorandum at 11-12.[23]  Defendants further contend that Tackman's assertions regarding Defendants' interference with Tackman's attempts to exhaust his administrative grievances fall short of the threats or retaliatory action required by Defendants to warrant excusing Tackman from the PRLA's administrative remedies exhaustion requirement.  Defendants' Exhaustion Requirements Memorandum at 12.

Although the Hamilton Affidavit bears the following notation: "Sworn to me before [*sic*] this 28th day of October, 2002" followed by an illegible signature on a line underneath which appear the words "Notary Public," Hamilton Affidavit at 2, the notation

---

[23] It is not clear to what period of time the grievances which Tackman alleges Defendants confiscate and destroyed pertained.

is not accompanied by any notary stamp nor any other indication substantiating that the purported and unidentified notary public is in fact commissioned to notarize signatures in New York.  *See* New York Exec. Law § 137 (McKinney 2001) ("In exercising his powers pursuant to this article, a notary public, in addition to the venue of his act and his signature, shall print, typewrite, or stamp beneath his signature in black ink, his name, the words "Notary Public State of New York," the name of the county in which he originally qualified, and the date upon which his commission expires and, in addition, wherever required, a notary public shall also include the name of any county in which his certificate of official character is filed, using the words "Certificate filed ...... County.").  Nevertheless, although the Second Circuit Court of Appeals has held that a district court should *not* disregard an unsworn statement in ruling on a motion for summary judgment, "[a] document's qualification as an affidavit is not determined by the presence or absence of 'the stamp or seal of a notary.'" *DeMars v. O'Flynn*, 287 F.Supp.2d 230, 242 (W.D.N.Y. 2003) (quoting 11 MOORE'S FEDERAL PRACTICE, § 56.14[1][b] (Matthew Bender 3d ed.)).  *See also LeBouef, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (discussing requirements of declarations made pursuant to 28 U.S.C. § 1746 and offered in opposition to summary judgment).  Rather, the statement may properly be considered in opposition to summary judgment provided the proffered statement conforms to the requirements of 28 U.S.C. § 1746.  *LeBoeuf, Lamb*, *supra*, 185 F.3d at 65-66.

In particular, 28 U.S.C. § 1746 provides that whenever, under any law or rule of the United States,

any matter is required or permitted to be supported, evidenced, established, or

proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

* * *

(2) If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).

(Signature)'.

28 U.S.C. § 1746.

A writing that does not contain the exact language of 28 U.S.C. § 1746 will not be disregarded provided "it substantially complies with these statutory requirements, which is all that this Section [1746] requires."  *LeBoeuf, Lamb*, *supra*, 185 F.3d at 65-66 & n. 2 (noting that the Fifth Circuit, in holding in *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988), that an affidavit that did not satisfy the requirements of 28 U.S.C. § 1746 because it was "neither sworn *nor* its contents stated to be true and correct *nor* stated under penalty of perjury," by stating requirements in the disjunctive, "indicated that a party need not satisfy all of them in order for a court to consider the affidavit.") (italics added)

In the instant case, Hamilton averred in his affidavit, "DERRICK HAMILTON, being duly sworn, does state the following:," Hamilton Affidavit at 1, but does not indicate either that he is swearing under penalty of perjury or that the affidavit's contents are true.  Accordingly, the Hamilton Affidavit may not be considered in opposition to Defendants' summary judgment motion as Hamilton, in making the affidavit, has not subjected himself to the penalties for perjury should it ultimately be

determined that the statements contained therein are false.  *See Nissho-Iwai American Corp., supra*, 845 F.2d at 1306 (holding affidavit that did not substantially conform to formula set forth in 28 U.S.C. § 1746 because it was neither made "under penalty of perjury," nor verified as "true and correct," allowed the affiant to circumvent penalties for perjury despite signing intentional falsehoods and, as such, had to be disregarded as proof on summary judgment).  *See also McLaughlin v. Cohen*, 686 F.Supp. 454 (S.D.N.Y. 1988) (observing that an unsworn declaration lacking a notary public's seal, but indicating it was made under penalty of perjury could substitute for sworn affidavit on summary judgment, and citing *Pfeil v. Rogers*, 757 F.2d 850 (7th Cir. 1985) (unsworn declaration lacking notary's seal, but indicating it was made under penalty of perjury and before a notary was admissible on summary judgment motion)).

As such, without the Hamilton Affidavit, the only evidence Tackman asserts in opposition to summary judgment on this point is his own statement denying statements by Defendants Struebel and Eagen that Tackman, while imprisoned in Attica, filed only one grievance, Grievance No. A38418-99, regarding his ad seg status.  In particular, Tackman states "I attempted to file many grievances over the years, although I seldom, if ever got responses to those grievances."  Tackman Affidavit ¶ 6.  Such conclusory and self-serving statements are, however, without more, insufficient to defeat summary judgment.  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 85 (2d Cir. 2005) ("The law is well established that conclusory statements, conjecture, or speculation are inadequate to defeat a motion for summary judgment.") (internal citations and quotations omitted).  Furthermore, as Tackman has failed to support this assertion with any admissible evidence, Defendants need not provide any evidence to defeat it.  *St. Pierre*, *supra*, 208

F.3d at 404.  Accordingly, summary judgment should be GRANTED as to this aspect of Defendants' motion.

### d.    Special Circumstances Negating Obligation to Exhaust

Tackman lastly asserts that if he was required, but failed, to exhaust, either formally or informally, available administrative remedies, and if Defendants did not engage in any conduct estopping them from asserting failure to exhaust as an affirmative defense, then special circumstances justify Tackman's failure to exhaust, including that (1) because Defendant prison officials were afforded the opportunity to address Tackman's complaints internally prior to the initiation of this action, Tackman should not be held to the strict time requirements of DOCS Directive 4040, Plaintiff's Exhaustion Requirements Memorandum at 15-18; (2) Tackman had a reasonable belief that the proper mechanism for administratively exhausting his claims was outside DOCS Directive 4040's formal grievance procedure, Plaintiff's Exhaustion Requirements Memorandum at 18-19; and (3) Tackman will suffer irreparable harm if his claim is dismissed, *id.* at 19-21.  Defendants argue in opposition that none of Tackman's asserted "special circumstances" justify his failure to exhaust administrative remedies.  Defendants' Exhaustion Requirements Motion at 4-6.

Since the undersigned filed the September 15, 2003 Decision and Order and Report and Recommendation, the Second Circuit has issued several decisions providing for an exception to the administrative exhaustion requirement in "special circumstances."  *See e.g.*, *Hemphill*, *supra*, 380 F.3d 680; *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); and *Berry v. Kerik*,

366 F.3d 85 (2d Cir. 2004).  Circumstances found to be sufficiently "special" as to

negate the need to administratively exhaust claims include a reasonable belief that the

relevant DOCS Directive and regulations foreclosed administrative remedies, *Giano*,

*supra*, 380 F.3d at 678; behavior by prison officials in threatening and intimidating an

inmate prevented or deterred the inmate from filing any administrative grievance such

that the grievance procedures were unavailable, *Hemphill*, *supra*, 380 F.3d at 688; a

prison official's failure to implement favorable rulings the inmate received on grievances

resolved through the IGP inhibited the inmate's ability to timely grieve such failure,

*Abney*, *supra*, 380 F.3d at 669-70; and where the inmate's release from custody

renders him unable to pursue administrative remedies, *Berry*, *supra*, 366 F.3d at 87-89.

In the instant case, however, Tackman fails to establish any such "special

circumstances" excused him from his obligation to exhaust administrative remedies.

As to Tackman's assertion that he was not required to comply with the strict four-

day time-period in which to file an administrative grievance pursuant to the IGP in

accordance with 7 N.Y.C.R.R. 701.7 and DOCS Directive 4040, Plaintiff's Exhaustion

Requirements Memorandum at 15-18, the cases on which Tackman relies in support of

this argument, including *Giano*, *supra*, 380 F.3d 670, *Evans v. Johnson*, 253 F.Supp.2d

505 (W.D.N.Y. 2003), and *Reyes v. McGinnis*, No. 00-CV-6352-CJS, 2003 WL

23101781 (W.D.N.Y. April 10, 2003), are inapposite.  Specifically, in *Giano*, *supra*,

although the Second Circuit stated that inmates may be justified in failing to comply with

the technical requirements of the IGP if their interpretation of the rules, although

mistaken, is reasonable, *Giano*, *supra*, 380 F.3d at 679, here, Tackman has not

identified any rule or misinterpretation thereof on which he mistakenly, yet reasonably,

relied.  Further, as discussed, Discussion, *supra*, at 42-47, Tackman's assertion that he relied on the IGRC's response to Grievance No. 38414-99, directing him to write various other prison officials to resolve the matter, in determining that he was not required to appeal the decision is without merit because Tackman did not comply with the directions received in response to such letters, *i.e.*, Tackman never wrote to, nor otherwise requested from, the Inmate Records Coordinator copies of his ad seg status review reports.  The make-weight nature of Tackman's argument is thus apparent.

At issue in *Evans*, *supra*, was whether a prison inmate who brought a § 1983 action alleging correctional officers has assaulted him in violation of his Eighth Amendment rights, and who conceded he did not follow the three-step review process under 7 N.Y.C.R.R. § 701.7(a)(1), nevertheless exhausted administrative remedies under 7 N.Y.C.R.R. § 701.11, which provides an alternative procedure available to inmates who, like the plaintiff in *Evans*, alleged he was harassed or assaulted by correctional officials.  *Evans*, *supra*, 253 F.Supp.2d at 508-09.  Significantly, however, the timeliness of the plaintiff's grievance in that case under 7 N.Y.C.R.R. § 701.11 was not challenged, and Tackman's claims differ from those in *Evans*.

In *Reyes*, *supra*, the district judge held that although 7 N.Y.C.R.R. § 701.7 "provides that the deadlines for inmates to file appeals [of denied grievances filed pursuant to the IGP] are triggered by the inmate's *receipt of a written response* from either the IGRC or the superintendent," 7 N.Y.C.R.R. § 701.8 "states that 'matters not decided within the time limits *may* be appealed to the next step,' but is not mandatory."  *Reyes*, *supra*, at *5 (quoting 7 N.Y.C.R.R. §§ 701.7 and 701.8).  The court then declined to find the inmate plaintiff's appeals pursuant to the inmate grievance

procedure were time-barred because the inmate never received any denials of his grievances so as to trigger the appeals clock.  *Id.*  In contrast, in the instant case, Tackman does not argue, nor does the record support, that Tackman never received any response to Grievance No. 38414-99 such that his time to file an appeal never commenced running.  *Reyes*, *supra*, 2003 WL 23101781, therefore also fails to support Tackman's argument that he was excused from strictly complying with 7 N.Y.C.R.R. § 701.7's time table governing exhaustion of administrative remedies, including the right to appeal in the event of not receiving a timely response to the grievance, pursuant to the IGP.

Tackman also maintains he should be excused from the administrative exhaustion requirement because he reasonably believed that the proper mechanism for exhausting his claims was outside the formal grievance procedure of DOCS Directive 4040.  Plaintiff's Exhaustion Requirements Memorandum at 18-19.  According to Tackman, upon filing Grievance No. 38414-99, Tackman was advised to write to various other Attica prison officials and, upon following such instructions, only received responses denying him the requested relief.  *Id.* at 18.  Tackman further maintains that as he did not have independent access to information regarding the grievance procedures, he depended on SHU employees to provide him with such information, with which he diligently complied.  *Id.*  Tackman thus asserts that he was justified in not following formal procedural requirements, including possible appeal, to administratively exhaust his claims.  *Id.* at 18-19.  Defendants argue in opposition that Tackman fails to point to any other type of review mechanism that confused Tackman of the need to follow DOCS Directive 4040.  Defendants Exhaustion Requirements Memorandum at 5-

6.  Defendants further urge the undersigned to adhere to the recommendation in the September 15, 1993 Decision and Order and Report and Recommendation that Tackman's assertion that he was never provided with a copy of DOCS Directive 4040 is insufficient to excuse Tackman from the PLRA's administrative exhaustion requirements.  *Id.* at 4-5.

As to Tackman's assertion that the March 10, 1999 IGRC response he received to Grievance No. 38414-99,[24] advising Tackman to write to certain Attica prison officials regarding his complaint that he was not provided with written notice that his ad seg review hearings had been conducted, as well as the result of such hearings, the court observes that even if such response caused Tackman to believe, in good faith, that he was not required to appeal the denials of his requests in accordance with the procedures set forth in DOCS Directive 4040, Tackman nevertheless failed to comply with one important instruction that he admittedly did receive.  Specifically, as discussed, Discussion, *supra*, at 48-49, the March 10, 1999 IGRC response advised Tackman that Grievance No. 38414-99 was being dismissed pursuant to DOCS Directive 4040.V.A.5.a(1) (permitting dismissal of an inmate's grievance for failing to make any "effot to resolve the complaint through existing channels."), and that Tackman need to address the issue to "Sgt. Buehler, Lt. J. Bea, Capt. R.K. James and Dept. Supt. of Security, J. Conway, in that order."  March 10, 1999 IGRC Response.  A handwritten notation appearing at the bottom of a March 15, 1999 letter Tackman wrote to Sgt. Buehler, Lt. J. Bea,  Capt. R.K. James and Dept. Supt. of Security J. Conway,

---

[24] Struebel Decalaration Exh. F.

Plaintiff's Exh. C, regarding the issue advises Tackman that his ad seg reviews were being conducted as required, that Tackman was not a required recipient of the ad seg review reports, but that if Tackman desired copies of such reports, he must contact the F.O.I.L. officer, i.e., the Inmate Records Coordinator.  Plaintiff's Exh.  In a separate response to Tackman's Grievance No. 38414-99, Capt. R. James similarly advised Tackman that his ad seg reviews were being "conducted as appropriate," that Tackman was not a required recipient of the ad seg review reports, and further advised Tackman to contact the F.O.I.L. Officer, the Inmate Record Coordinator, for copies of the ad seg status reports.  Plaintiff's Exh. D.

As discussed, Discussion, *supra*, at 48-49, the record is barren of any indication that Tackman ever troubled to contact the Inmate Records Coordinator to obtain copies of his ad seg reviews which are at the heart of his due process claim.  Nor does Tackman argue that such direction was confusing.  Additionally, had Tackman, as instructed, made a F.O.I.L. request to the Inmate Records Coordinator for copies of his ASRC ad seg status review reports, and had such request been denied, Tackman's argument that he relied on the March 10, 1999 IGRC response in failing to appeal the IGRC's response to the CORC could not avoid summary judgment as, in such case, Tackman would then be required to pursue his administrative remedies with regard to the denial of his F.O.I.L. request.  Because Tackman's failure to follow the instructions to make a F.O.I.L. request by writing to the Inmate Records Coordinator thus further belies Tackman's assertion that he reasonably relied on the instructions he received in response to Grievance No. 38414-99 in attempting to exhaust his administrative remedies, the record unequivocally demonstrates Tackman labored under no such

confusion.

Further, as recommended in the September 15, 2003 Decision and Order and Report and Recommendation at 26, Tackman's contention that he was not aware of DOCS Directive 4040 or the PLRA's requirement that administrative remedies, including potential appeals, be exhausted prior to filing a § 1983 action challenging the conditions of confinement is equally meritless.  In particular, as this court found, "[i]f Plaintiff's contention were accepted, the court would be unable to find any failure to exhaust where a prisoner asserted lack of personal knowledge of the required procedures, thereby defeating Congress's intent [with respect to the exhaustion prerequisite to district court review]."  September 15, 2003 Decision and Order and Report and Recommendation at 27.  As such, Tackman may not sidestep the PLRA's broad exhaustion requirements to avoid summary judgment by raising his asserted ignorance of the law, or Directive 4040 and his available grievance procedures.

Finally, Tackman contends that dismissal of this action for failure to timely exhaust administrative remedies according to DOCS Directive 4040's time limits will result in irreparable harm given that Tackman would then be required to re-file his action, on essentially the same facts already before the court, resulting in further delaying Tackman's release from SHU on ad seg status and enrollment in programming that will enhance his likelihood of parole.  Plaintiff's Exhaustion Requirements Memorandum at 19-21.  According to Tackman, relying on *Marvin*, *supra*, 255 F.3d 40, for the proposition that the PLRA's exhaustion requirement might be avoided "when the remedy sought . . . is available in the prison administrative proceedings but, because of exigencies of the situation, the remedy may be ineffective," the threat of irreparable

harm to Tackman in the instant case presents such an "exigency," *i.e.*, a "special circumstance," excusing Tackman's failure to comply with relevant exhaustion requirements.  Plaintiff's Exhaustion Requirements Memorandum at 20 (quoting *Marvin*, *supra*, 255 F.3d at 43).  Defendants have not responded to this argument.

In *Marvin*, *supra*, however, the Second Circuit affirmed the district court's dismissal of the inmate plaintiff's due process challenge to the denials of his parole applications on the ground that "the New York State parole scheme does not create a protectable liberty interest."  *Marvin*, *supra*, at 44 (citing *Barna v. Travis*, 239 F.3d 169, 170-71 (2001) (denying, on merits, § 1983 due process and *ex post facto* challenges to parole denial)).  Specifically, for an inmate to have a liberty interest in parole "that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme."  *Barna*, *supra*, 239 F.3d at 170. Neither the mere possibility nor a statistical probability of release gives rise to a legitimate expectation of release on parole.  *Id*. at 170-71.  In fact, "the New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, *supra*, at 170.  Rather, inmate plaintiffs in New York prisons "have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable."  *Id*. at 171.

Accordingly, as Tackman has no demonstrable likelihood of parole protected by the Due Process Clause, it logically follows that even if unlawful, Tackman's continued confinement in SHU on ad seg status, which renders Tackman ineligible to participate in prison programs that may, in turn, increase the likelihood of his release on parole, cannot result in irreparable harm to Tackman.  More significantly, Tackman points to

nothing to support his suggestion that but for the alleged procedural due process violations, the adverse ad seg status determinations would have been any different. Nor is there any caselaw to support affirmative injunctive relief directing a plaintiff's release from SHU custody based on similar due process violations as alleged here. Thus, Tackman's alternative arguments must be rejected and summary judgment on this aspect of Defendants' motion should, therefore, be GRANTED.

### 2.    Pendent State Claims

In his Second Amended Complaint, Tackman challenges his continued ad seg status and confinement in SHU as in violation of his civil rights under the relevant provisions of New York law, particularly, his rights to due process, adequate medical care and association under the New York Constitution and New York Executive Law. Second Amended Complaint Fourth, Sixth, Ninth, Tenth, Eleventh, Twelfth and Fifteenth Causes of Action.[25]  Defendants argue that this court is without supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims as the Eleventh Amendment's doctrine of sovereign immunity prohibits such claims from being maintained against state employees in their official capacity.  Defendants' Memorandum at 10-11.  Tackman has not responded to this argument.

The district courts have supplemental jurisdiction "in any civil action of which the district courts have original jurisdiction" as to "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case

---

[25] Tackman does not specify under which section or part of the New York Constitution or New York Executive Law his state claims are brought.

or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Nevertheless, a court may decline to exercise supplemental jurisdiction over state law

claims where (1) the court has dismissed all claims over which it has original

jurisdiction, or (2) in exceptional circumstances, there are other compelling reasons for

declining jurisdiction. 28 U.S.C. § 1367(c)(2),(3). The Second Circuit has stated that

"'in the usual case in which all federal-law claims are eliminated before trial, the balance

of factors to be considered . . . will point toward declining to exercise jurisdiction over

the remaining state-law claims.'" *Travelers Ins. Co. v. Keeling*, 996 F.2d 1485, 1490

(2d Cir.1993) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988));

*Warren v. Fischel*, 33 F.Supp.2d 171, 178 (E.D.N.Y. 1999).

As such, in the instant case, assuming, *arguendo*, the District Judge agrees with

the recommendation that summary judgment should be granted in favor of Defendants

on all the federal claims based on Tackman's failure to exhaust administrative state

remedies relative to such claims, then the District Judge should refrain from exercising

supplemental jurisdiction over the pendent state claims. *See Martz, supra*, at 32

("[h]aving dismissed all of the plaintiff's federal claims, the district court was correct in

dismissing her pendent state law claims."). In such case, the pendent state claims

should be DISMISSED without prejudice.

Alternatively, should the District Judge disagree with the recommendation to

refrain from exercising supplemental jurisdiction over the pendent state claims, then

such claims against individual defendants in their official capacities are, nevertheless,

barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)

(holding claim for damages against state officials in their official capacity is considered

claim against the state and, therefore, is barred by the Eleventh Amendment);

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (agencies and

departments of the state are entitled to assert the state's Eleventh Amendment

immunity); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (state, state department

of corrections, state prison, and prison officials in their official capacities are, under the

Eleventh Amendment, immune from suit seeking monetary damages in prisoner's §

1983 civil rights action).  Accordingly, in the instant action, summary judgment should

be GRANTED in Defendants' favor insofar as Tackman seeks money seeks monetary

damages against Defendants, sued in their official capacities, under immunity afforded

by the Eleventh Amendment, but not insofar as they are sued in their individual,

unofficial capacities.[26]

Defendants are also immune from suit, based on state law, in their individual

capacities pursuant to New York Corrections Law § 24.1 (McKinney 2003) ("N.Y. Corr.

Law § 24.1"), which provides that "[n]o civil action shall be brought in any court of the

state, except by the attorney general on behalf of the states, against any officer or

employee of the department, in his personal capacity, for damages arising out of any

act done or the failure to perform any act within the scope of the employment and in the

discharge of the duties by such officer or employee."  *See Baker v. Coughlin*, 77 F.3d

---

[26] Insofar as Tackman was, in 2003, designated for central office review pursuant to 7 N.Y.C.R.R. § 301.4(d), Tackman now receives the equitable relief sought in this action, including the opportunity to present evidence on his behalf for consideration by the CORC in reviewing Tackman's ad seg status, and written notice of the results of such reviews.  Accordingly, Tackman's claim for injunctive relief against Defendants in their official capacities, although not barred by Eleventh Amendment immunity, is now moot.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (a case is moot when "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, [and] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.").

12, 15-16 (2d Cir. 1996) (dismissing pendent state law claims against individual

corrections officers as N.Y. Corr. Law § 24.1 forbids suit against an officer or employee

of DOCS in his personal capacity);*Jackson v. New York  Department of Correctional*

*Services*, 994 F.Supp. 219, 224 (S.D.N.Y. 1998) (holding under N.Y.Corr. Law § 24.1

that inmate-plaintiff who alleged that he had been improperly confined in SHU for 13

days could bring action only against Department of Correctional Services and not

against individual officers and employees of DOCS).  Accordingly, summary judgment

also should be GRANTED in favor of Defendants as to Tackman's pendent state law

claims insofar as they are asserted against Defendants in their individual capacities.

As such, if the District Judge disagrees with the recommendation that summary

judgment be granted in favor of Defendants on Tackman's federal claims, or, if the

District Judge agrees the recommendation that summary judgment be granted in favor

of Defendants on the federal claims, yet disagrees with the recommendation to refrain

from exercising supplemental jurisdiction over the pendent state claims, then summary

judgment should be GRANTED in favor of Defendants on the pendent state claims as a

matter of state law, based on immunity.


**B.     Plaintiff's Cross-Motion for Summary Judgment**

Assuming, *arguendo*, the District Judge agrees with the recommendations that

Defendants' motion for summary judgment be granted, as well as either that

supplemental jurisdiction should not be exercised over Tackman's pendent state

claims, or that summary judgment should be granted in favor of Defendants on

Tackman's state claim based on immunity, then Tackman's cross-motion for summary

judgment would be rendered moot.  Nevertheless, in the interest of completeness, the court addresses Tackman's cross-motion as an alternative recommendation in the event the District Judge does not agree with the primary recommendations that summary judgment be granted Defendants' favor.

Tackman seeks partial summary judgment on his Eighth, Ninth, Twelfth, Thirteenth and Fifteenth Causes of Action alleging Tackman's continued ad seg status and resulting continued SHU confinement violates his rights to due process, freedom from cruel and unusual punishment, and free association in violation of the United States Constitution's First, Eighth and Fourteenth Amendments, as well as the New York State Constitution.  Plaintiff's Memorandum at 1.  Defendants argue in opposition that the cross-motion for partial summary judgment should be stricken as untimely. Defendants' Memorandum in Support of Sanctions at 3.  Tackman asserts in further support of the cross-motion that striking the cross-motion as untimely would not be in the interest of judicial economy.  Richmond Sanctions Affirmation ¶¶ 74-83.

In the September 15, 2003 Report and Recommendation and Decision and Order, the undersigned recommended denying Tackman's cross-motion for partial summary judgment as untimely given that the court's May 6, 2002 Scheduling Order (Doc. No. 96) established October 31, 2002 as the deadline for filing dispositive motions, and Tackman's cross-motion was not filed until November 25, 2002. September 15, 2003 Decision and Order and Report and Recommendation at 34 (citing Defendants' Memorandum in Support of Sanctions at 3; Siragusa Sanctions Declaration ¶ 30, and Defendants' Reply Declaration in Support of Sanctions at 8).  In particular, although Defendants' motion for summary judgment was limited to the

question of whether Tackman had exhausted his administrative remedies regarding his claims, Tackman's cross-motion concerns the merits of those claims for which Tackman seeks partial summary judgment.  September 15, 2003 Decision and Order and Report and Recommendation at 35.  Accordingly, Defendants could not be said to have been aware that the court, when addressing Defendants' summary judgment motion, might consider the merits of the claims for which Tackman seeks partial summary judgment.  *Id*. at 35-36.  Nor had Tackman moved to amend the scheduling order to permit filing the cross-motion for partial summary judgment, after the deadline for filing dispositive motions had passed, much less demonstrated "good cause" for such an amendment as required under Fed. R. Civ. P. 16(b) ("A scheduling order shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by the Local Rule, by a magistrate judge.").  *Id*. at 36 (citing cases). The undersigned thus recommended Tackman's cross-motion for partial summary judgment be DISMISSED as untimely.  *Id*. at 37.  Alternatively, the undersigned recommended the cross-motion  be DENIED on the basis that material issues of genuine fact exist as to whether Tackman's continued confinement in SHU on ad seg status violated his First, Eighth and Fourteenth Amendment rights to due process, freedom from cruel and unusual punishment and free association, as well as the New York State Constitution.  *Id*.

In his Objections to the September 15, 2003 Decision and Order and Report and Recommendation, filed October 17, 2003 (Doc. No. 126), Tackman argued, *inter alia*, that the cross-motion was timely filed because Rule 56.1(e) of the Local Rules of Civil Procedure "explicitly authorizes the filing of a cross-motion for summary judgment as

part of a party's response to a motion for summary judgment."  Plaintiff's Objections at

12-13.  Defendants argue in opposition that Tackman's reliance on Local Rule 56.1(e)

as permitting the filing of a cross-motion for summary judgment in opposition to a

motion for summary judgment is inconsistent with the fact that Local Rule 56.1(e) did

not become effective until May 1, 2003, more than five months after Tackman's cross-

motion seeking partial summary judgment was filed.  Defendants' Memorandum

Opposing Plaintiff's Objections at 16-17.

Local Rule 56.1(e) provides that unless otherwise ordered by the court, the party

opposing a summary judgment motion shall have 30 days after service of the motion to

serve and filed responding papers, after which the moving party shall have 15 days to

serve and file reply papers.  Local Rule 56.1(e).  The rule further provides that

> [i]n the event that the party opposing the original motion files a cross-motion, the
> original moving party shall have thirty days after service of the cross-motion,
> unless otherwise ordered by the Court, to serve and file responding papers in
> opposition to the cross-motion; the party that filed the cross-motion shall have
> fifteen days after service of the responding papers, unless otherwise ordered by
> the Court, to serve and file reply papers in support of the cross-motion.

Local Rule 56.1(e).

Tackman relies on this language in support of his argument that Local Rule 56.1(e)

"explicitly authorizes the filing of a cross-motion for summary judgment as part of a

party's response to a motion for summary judgment."  Plaintiff's Objections at 13.

Tackman's argument, however, fails for two reasons.  First, as Defendants point

out, Defendants' Memorandum Opposing Plaintiff's Objections at 16-17, Local Rule

56.1(e), insofar as it permitted filing a cross-motion as part of a response, did not

become effective until May 1, 2003, more than five months after Tackman's cross-

motion for partial summary judgment was filed on November 25, 2002.  Second, even if the current version of Local Rule 56.1(e), as amended, was in effect when Tackman's cross-motion was filed, a plain reading of Local Rule 56.1(e) does not establish that it is intended to supplant and automatically extend the deadline for the filing of dispositive motions beyond that otherwise established by a court's existing scheduling order governing the original summary judgment motion filed.  Rather, an interpretation that is more consistent with Fed. R. Civ. P. 16(b)'s direction that scheduling orders not be modified except upon a showing of "good cause" is that, in the absence of a court order directing otherwise, and *where a summary judgment motion is filed before the expiration date for the filing of dispositive motions, such that the non-moving party is not time-barred by the scheduling order from timely filing a cross-motion*, Local Rule 56.1(e) establishes requirements as to the contents of and time for filing papers in connection with the timely filed cross-motion for summary judgment that are similar to the requirements for the contents of and time for filing papers in connection with the initial summary judgment motion.  That the filing and service requirements set forth in Local Rule 56.1(e) are to apply only "unless otherwise ordered by the Court," indicates that the filing of a cross-motion in opposition to summary judgment is permitted only in the absence of a court order directing otherwise.

Here, the court's scheduling order governing Defendants' summary judgment motion did not authorize Tackman's cross-motion.  Rather, Tackman was required to seek summary judgment, as were Defendants, in accordance with the Rule 16(b) May 16, 2002 Scheduling Order for the case.   Accordingly, there is no merit to Tackman's argument that the cross-motion seeking partial summary judgment was timely filed

under Local Rule 56.1(e).

Tackman further maintains that Defendants would not be "surprised" by the filing of the cross-motion given that Defendants, in replying in further support of Defendants' summary judgment motion, requested additional time to respond to the merits of Tackman's cross-motion and, when it became apparent during oral argument on the motions on January 29, 2003 that the undersigned was not inclined to grant Defendants' request for more time within which to oppose Plaintiff's cross-motion, Defendants filed their motion for discovery-related sanctions (Doc. No. 115) on February 10, 2003.  Plaintiff's Objections at 14.  Tackman also asserts, based on statements set forth in the Affirmation of Anna Marie Richmond in Opposition to Defendants' Motion for Discovery-Related Sanctions (Doc. No. 121), that Ms. Richmond had engaged in numerous, lengthy discussions regarding Tackman's intention to move for summary judgment on the merits such that Tackman is the party who was surprised when Defendants moved for summary judgment.  *Id*.  Defendants argue in opposition that given that Defendants' motion for summary judgment was the only dispositive motion filed as of the October 31, 2002, in accordance with May 6, 2002 Scheduling Order deadline, and as Defendants' motion was limited to the issue of whether Tackman had exhausted administrative remedies relative to his claims, Defendants were, in fact, surprised to be served with Tackman's cross-motion seeking partial summary judgment on the merits of several of Tackman's claims, more than three weeks after the deadline for dispositive motions had expired.  Defendants' Memorandum Opposing Plaintiff's Objections at 17-18.

That Defendants, in replying in further support of Defendants' summary

judgment motion, requested additional time to respond to the merits of Tackman's cross-motion demonstrates, contrary to Tackman's assertions, that Defendants were, indeed, surprised by the cross-motion.  Otherwise, Defendants would not have needed the additional time requested to respond in opposition to the cross-motion.  That Defendants also moved for discovery-related sanctions has no bearing on whether Defendants were surprised by the untimely filing of the cross-motion given that the sanctions sought by Defendants pertained to Tackman's failure to produce in response to Defendants' discovery requests documents pertaining to the issue of whether Tackman had exhausted his administrative remedies, rather than the merits of the claims for which Tackman seeks partial summary judgment.  Nor are the representations made by the parties to each other in discussions prior to the filing of the motions determinative as to whether Defendants were surprised to receive Tackman's cross-motion for partial summary judgment in response to Defendants' summary judgment motion, filed more than three weeks after the deadline for filing dispositive motions.  As such there is no merit to Tackman's argument based on any asserted lack of surprise to Defendants.

Finally, Tackman asserts that there is no legal basis to deny the cross-motion for partial summary judgment on the merits given that Defendants have failed to submit any evidence opposing the merits of Tackman's cross-motion as Rule 56(c) requires. Plaintiff's Objections at 14-16.  Defendants argue in opposition that because their request for additional time to respond in opposition to the cross-motion was denied, they were unable to timely provide such evidence in opposition to the cross-motion. Defendants' Memorandum Opposing Plaintiff's Objections at 18-19.

Tackman asserted in support of his cross-motion for partial summary judgment that he had a protected liberty interest in remaining free from extended confinement in SHU on ad seg status, Plaintiff's Memorandum at 10-12, that the periodic review of his ad seg status was a sham in that Tackman was routinely denied notice of the reviews and the opportunity to present evidence before Attica's ASRC, resulting in meaningless reviews that denied Tackman due process, *id.* at 12-13 and 14-16, and that the continuation of Tackman's ad seg status has been a pretext for indefinite confinement in SHU, *id.* at 13-14, which is cruel and unusual punishment in violation of the Eighth Amendment, *id.* at 16-19.  All of the issues on which Tackman seeks summary judgment, however, involve the same issue that is central to this action, *i.e.*, whether the DOCS Directive and regulations governing Tackman's ad seg status and resulting confinement in SHU were properly followed and, if so, whether such DOCS Directive and regulations were unconstitutional.  Significantly, the evidence submitted by Tackman in support of partial summary judgment does not establish the absence of any issue of fact but, rather, merely substantiates Tackman's belief that the relevant Directives and regulations are unfairly being applied to him.  Such belief, however, even if sincere, is insufficient to establish, as a matter of undisputed fact, that Tackman was wrongly denied meaningful review of his ad seg status so as to unlawfully continue his confinement in SHU.  Accordingly, Defendants were not required to submit any evidence in opposition to summary judgment on this issue, *St. Pierre*, *supra*, 208 F.3d at 404, and this argument is meritless.

Tackman's cross-motion for partial summary judgment should be DENIED.

## CONCLUSION

Based on the following, Defendants' motion for summary judgment (Doc. No. 97) should be GRANTED; Plaintiff's cross-motion for summary judgment (Doc. No. 103), should be DISMISSED as moot or, alternatively, should be DENIED; Defendants' motion (Doc. No. 115) should be GRANTED insofar as Defendants seeks to strike Plaintiff's cross-motion for summary judgment as untimely filed, and should be DENIED insofar as it seeks discovery-related sanctions;  Plaintiff's first motion to supplement the record (Doc. No. 132) is GRANTED and Plaintiff's second motion to supplement the record (Doc. No. 133) is GRANTED.  The Clerk of the Court should be directed to close the file.

SO ORDERED, as to Defendants' motion
for discovery-related sanctions, and
Plaintiff's first and second motions to
supplement the record,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Respectfully submitted, as to Defendants'
motion for summary judgment, Plaintiff's
cross-motion for summary judgment, and
Defendants' motion to strike Plaintiff's cross-
motion for summary judgment,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      September 26 , 2005
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      September 26, 2005
              Buffalo, New York